IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

| | | |
|---|---|---|
| JAMES WOOD, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:22cv18 |
| | ) | |
| BRISTOL VIRGINIA UTILITY | ) | |
| AUTHORITY, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendant, BVU Authority, incorrectly sued herein as Bristol Virginia Utility Authority (hereinafter "BVUA" or the "Authority"), by counsel, submits this memorandum in support of its motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STATEMENT OF THE CASE

Plaintiff, James Wood, filed his six Count complaint alleging, among other things, that he was discriminated and retaliated against when he was terminated from his employment as an Engineering and Geographic Information Systems ("GIS") Technician in violation of the Americans with Disabilities Act, the Family and Medical Leave Act, the Virginia Fraud and Abuse Whistleblower Protection

Act, and Virginia Code § 40.1-27.3 after he contracted COVID-19 in March of 2021.

Plaintiff seeks equitable and injunctive relief, compensation for lost wages and benefits, emotional pain and suffering, liquidated damages, punitive damages, interest, fees, and costs.

<u>STATEMENT OF FACTS</u>

Plaintiff, James Wood, was employed in June of 2016 as a GIS/Engineering Technician. Compl. ¶ 6. Plaintiff's co-worker "JP" tested positive for COVID-19 in March of 2021. *Id*. ¶ 24. JP reported to work, knowing he had COVID-19. *Id*. ¶ 25.

On March 30, 2021, Plaintiff tested positive for COVID. *Id*. ¶ 27. He notified BVUA's safety manager that JP had been coming to work for a week while testing positive with COVID-19. He also reported his own positive test. *Id*. ¶ 28. The following week, the plaintiff was hospitalized for four days with respiratory failure and sepsis. *Id*. ¶ 30. His infection resulted in a "severe case of COVID-19, which caused him to develop lifelong disabilities, often described as 'Long COVID.'" *Id*. ¶ 31. Plaintiff asserts that his lungs are irrevocably damaged, he suffers from shortness of breath, necessitating the use of oxygen, and fatigue, and is substantially limited in respiratory function. *Id*. ¶ 32.

On April 14, 2021, Mr. Wood applied for FMLA leave. *Id.* ¶ 33. He remained out of work until April 26, 2021, when he received a work release to work 20 hours per week until May 10, 2021. *Id.* ¶ 34.

Upon his return to work, the Human Resources Manager suggested to Mr. Wood that he "take a look at the American with Disabilities website," or words to that effect. *Id.* ¶ 78. Mr. Wood asserts that when he returned to work, his supervisor rejected his reduced work schedule. *Id.* ¶ 35. His supervisor and the CEO reviewed his medical documentation and sought clarification from his physician as to his diagnosis, the number of hours he could work during a day, the number of hours he could work during the week, the types of accommodations he required to work, and the identification of any job functions he could not perform. *Id.* ¶ 36. Mr. Wood asserts that he was informed that if he did not obtain such information from his employer, he would be terminated. *Id.*

On April 28, 2021, Mr. Wood received a negative performance evaluation because his supervisor "believed his work productivity was 'poor.'" *Id.* ¶ 39.

Mr. Wood asserts that he was informed that while on FMLA, he had the option of using his sick days or he could take unpaid leave. He chose to reserve his sick days. *Id.* ¶ 38. At a meeting on April 29, 2021, the Human Resources Director and an Accountant explained to Mr. Wood how much pay he would receive during his medical leave and how much sick leave he had remaining. *Id.* ¶

40.  Mr. Wood asserts that on April 30, 2021, the CEO determined that he would have to use all his sick leave prior to being eligible for FMLA leave.  *Id*. ¶ 41.

On May 9, 2021, Mr. Wood was diagnosed with a "second case of COVID-19."[1]  *Id*. ¶ 42.  He again quarantined for ten days and applied for FMLA leave.  *Id*. ¶¶ 43, 44.  The CEO rejected his FMLA paperwork because "he claimed that Mr. Wood's medical diagnosis was too vague."  *Id*. ¶ 45.  Mr. Wood reported to Human Resources that "the rejection of his medical leave request was due to a hostile work environment created by BVUA against those with disabilities who require medical or sick leave."  *Id*. ¶ 46.

On May 20, 2021, Mr. Wood's physician faxed a note to BVUA requesting that Mr. Wood be excused from work through May 28, 2021.  *Id*. ¶ 48.  The physician noted that Mr. Wood had cognition and endurance issues, would require a reduced work schedule of 32 hours per week upon his return to work from May 28-June 14, 2021, and would be absent from work on an intermittent basis if he experienced "episodes of incapacity" lasting between 2-8 hours, which were estimated to occur 3-4 times a week for the next six months.  Despite such limitations, the physician also noted that Mr. Wood "is able to perform all job

---

[1] Mr. Wood was still within the initial 90-day window from his original infection at the time of his second COVID-19 test.

4

functions but may require more time to complete tasks and wok shorter days or weeks." *Id*. ¶ 49.

On May 27, 2021, Mr. Wood contacted Human Resources and requested that he be able to use supplemental oxygen at work. *Id*. ¶ 50.

On May 28, 2021, Mr. Wood claims that he filed an OSHA complaint related to reporting JP for coming to work while infected, for his own positive COVID test, and his illness. *Id*. ¶ 51. Mr. Wood was supposed to return to work that day, but he was terminated by email instead. *Id*. ¶ 52.

Mr. Wood filed a charge of discrimination with the EEOC on January 5, 2022, and he received his right to sue notice thirty days later, on February 4, 2022. *Id*. ¶ 5.

<u>ARGUMENT</u>

I.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of Plaintiffs' complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair

notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly*, 550 U.S. at 555 (requiring a complaint to contain facts sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face").

## II.   PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION IN VIOLATION OF THE ADA (COUNT I).

The FMLA protects covered employees from retaliation for exercising rights under the Act.  29 U.S.C. § 2615(a)(1), (2) (making it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the FMLA); *Fry v. Rand Constr. Corp.,* 964 F.3d 239, 245 (4th Cir. 2020) *cert. denied*, 141 S. Ct. 2595 (2021). Retaliation claims brought under the FMLA are analogous to those brought under Title VII. *Laing v. Federal Express Corp.*, 703 F.3d 713, 717 (4th Cir.2013); *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 550–51 (4th Circ. 2006). To state a claim for retaliation, the plaintiff must allege facts to show (1) the employee "engaged in a protected activity"; (2) the "employer took an adverse employment action against" the employee; and (3) "there was a causal link between the two

events." *Boyer–Liberto v. Fontainebleau Corp.*, 786 F.3d 11 264, 281 (4th Cir. 2015) (en banc) (quotation marks omitted); *McCormack v. Blue Ridge Behavioral Healthcare*, 523 F. Supp. 3d 841, 850 (W.D. Va. 2021).

The plaintiff asserts that he was engaged in the protected activity of taking FMLA leave and that he was subsequently terminated, but he fails to assert any facts to establish a causal connection between the two events.  At most he asserts that he contracted COVID, applied for and received time off under the FMLA (which was unpaid leave requiring him to use his sick days with his FMLA leave) – not just once but twice – received contradictory information as to whether his leave would be paid or unpaid, and that his employer sought clarifying information from his physician in relation to his requested accommodations for his return to work.

The plaintiff also states that he was given an unsatisfactory work evaluation for "poor" work performance, and he was terminated.  His complaint is silent as to the stated reasons for either, leaving the Court and the defendant to fill in the blanks.

Without a causal connection between his FMLA leave and his termination, the plaintiff's claim for retaliation fails and must be dismissed.

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH
        FMLA RIGHTS (COUNT II).

It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an employee's FMLA rights. 29 U.S.C. § 2615(a)(1). To state an "interference" claim under the FMLA, an employee must assert facts to show that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm. *See Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed. 2d 167 (2002)); *see Fry*, 964 F.3d at 244 (internal quotation marks and citations omitted).

The "purpose of [an interference claim] is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions." *Id*. (quoting *Ragsdale*, 535 U.S. at 91).

The plaintiff fails to state facts to demonstrate that BVUA interfered with his FMLA rights.  Without question, the plaintiff applied for and received FMLA leave, not just once but twice within a sixty-day period.  He also received intermittent leave between those two periods of reported illness.

The actions that the plaintiff asserts constitute interference include (1) providing initially contradictory information as to whether the leave was paid or unpaid, which – if any such contradictory information was given at all – was

alleged to have been corrected within one day; and (2) seeking clarifying information from the plaintiff's physician related to the nature of his illness, the amount of time he required off, and how many hours he could work a day and in a week once he returned to work, which clarification was necessary as the physician both said he could perform all of the functions of his job but also that he suffered from cognition and endurance issues that limited his ability to work and that he could experience "episodes of incapacity" lasting between 2-8 hours, which were estimated to occur 3-4 times a week for the next six months.[2]  Mr. Wood was requested to obtain this information from his physician directly.  Compl. ¶¶ 36, 49. An employer is expressly permitted to seek clarifications of medical certifications under the FMLA regulations.  29 CFR § 825.307.

The plaintiff was not denied any benefits to which he was entitled under the FMLA.  As such, he fails to state a claim for interference with his FMLA rights, and such claim should be dismissed.

IV.    PLAINTIFF'S ADA CLAIMS MUST BE REMANDED TO THE EEOC FOR INVESTIGATION (COUNTS III AND IV).

---

[2] This information was sought as part of a review of his request for accommodations, not for his FMLA leave request, but given that the plaintiff pleads it in relation to his FMLA claim, it is being analyzed as potential interference with such claim.

Under 42 U.S.C. § 12117(a), Congress extended the EEOC's investigative and enforcement powers and procedures to claims under the ADA using the mandatory processing framework set forth in Title VII. 42 U.S.C. § 12117(a) ("The powers, remedies, and procedures set forth in sections 705, 706, 707, 709, and 710 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9) shall be the powers, remedies, and procedures this title provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this Act, or regulations promulgated under section 106 [42 USCS § 12116], concerning employment.")

Before a plaintiff can file suit under the ADA, therefore, he must exhaust the administrative procedures set forth in 42 U.S.C. §2000e-5. *See* 29 C.F.R. §1601.13 (2022); *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1844 (2019).  The plaintiff in this case pled that he filed a charge of discrimination with the EEOC on January 5, 2022, and received a right to sue notice dated February 4, 2022, which was issued thirty (30) days after he filed his charge and prior to any investigation by the EEOC. (Dkt. 1, ¶ 5.)  The EEOC issued a Notice of Charge of Discrimination to BVUA on January 14, 2022, and requested that BVUA submit a position statement within thirty (30) days of the notice.  *See* Notice of Charge of Discrimination and

Request for Position Statement, attached as Exhibit A.[3]  The EEOC dismissed the plaintiff's Charge prior to BVUA filing its position statement; accordingly, the EEOC could have conducted no investigation into the plaintiff's allegations.

When the EEOC receives a charge, it is statutorily required to notify the employer and investigate the allegations. 42 U.S.C. § 2000e-5(b). Section 2000e-5(b) prescribes the EEOC's duties once a charge is filed and says that the Commission "shall" investigate the charge and "shall" make a reasonable cause determination "as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." 42 U.S.C. § 2000e-5(b). The Commission's duty to investigate is both mandatory and unqualified. *See* 29 C.F.R. § 1601.28(a)(3); *Martini v. Fannie Mae*, 336 U.S. App. D.C. 289, 178 F.3d 1336, 1346 (1999).

The EEOC failed to perform its statutory obligations by dismissing the Charge without investigation.

---

[3] A court may consider documents outside of the complaint, or not expressly incorporated therein, without converting the motion into one for summary judgment when the document is sufficiently referred to in the complaint or central to the plaintiff's claim when the authenticity is not disputed. *Brentzel v. Fairfax Transfer & Storage, Inc.*, No. 21-1025, 2021 U.S. App. LEXIS 38522, at *5 (4th Cir. Dec. 29, 2021); *see also Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) (permitting consideration of extraneous material if such materials are "integral to and explicitly relied on in the complaint"). Here, the plaintiff specifically alleges that he filed a Charge of Discrimination with the EEOC and attaches the dismissal letter to his complaint.  The Notice attached as Exhibit A is an additional document taken from the EEOC's files related to the plaintiff's Charge of Discrimination.

Requiring a party to first file a charge with the EEOC ensures that the employer is given notice of the alleged claims, allows the employer a chance to remedy the discrimination before litigation commences, and provides the parties recourse to resolution in a more efficient and less formal manner. *Sydnor v. Fairfax County, Va*., 681 F.3d 591, 593 (4th Cir. 2012). Allowing the EEOC to terminate its investigation early – or to fail to conduct any investigation at all, as in this case – would undermine the EEOC's statutory duty to investigate and Congress's "policy of encouraging informal 'resolution up to the 180th day.'" *Hardy v. Lewis Gale Med. Ctr., LLC*, Civil Action No. 7:18-cv-00218, 2019 U.S. Dist. LEXIS 203712, at *6-7 (W.D. Va. Nov. 25, 2019).

In *Hardy v. Lewis Gale Medical Center*, Judge Dillon remanded the plaintiff's Title VII claim back to the EEOC for further investigation after holding that the EEOC's regulation permitting it to dismiss a claim without investigation prior to the expiration of 180 days "exceeded the Commission's rulemaking authority and conflicted with the requirements of 42 U.S.C. § 2000e-5(f)(1)." *Hardy v. Lewis Gale Med. Ctr., LLC*, Civil Action No. 7:18-cv-00218, 2019 U.S. Dist. LEXIS 203712, at *3-4 (W.D. Va. Nov. 25, 2019).

Judge Dillon noted that when

> [r]ead together, [§§ 2000e-5(b) and 2000e-5(f)(1)] require the EEOC to investigate a charge and dispose of it in one of the four ways listed in § 2000e-5(f)(1):

12

> conciliation, filing suit on behalf of the aggrieved person,
> dismissing the charge, or, if none of these actions are
> taken within the 180 day period, notifying the aggrieved
> person of his or her right to sue. When § 2000e-5(f)(1) is
> read in conjunction with § 2000e-5(b), it is clear that
> Congress intended for the EEOC to have control over
> charges of discrimination for 180 days and that a cause of
> action based on those charges may not be brought before
> the expiration of that time.

*Hardy*, at *4.

The Court further noted that the 180-day period was not just a holding

period, but instead, the period of time in which the EEOC must have control over

the plaintiff's charge to perform its statutory duty to investigate. *Hardy*, at *6; *see*

*Taylor v. Cardiology Clinic, Inc.*, No. 4:14-cv-46, 2015 U.S. Dist. LEXIS 21618,

2015 WL 770439, at *3 (W.D. Va. Feb. 24, 2015) ("In the present case, I join those

other courts that have considered the matter and have found that Congress' intent in

§ 2000e-5 is clear—the EEOC has control over charges of discrimination for 180

days, and not a day less.").

In the Determination and Notice of Rights, the EEOC stated that it "will not

proceed further with its investigation and makes no determination about whether

further investigation would establish violations of the statute."  It simply refused to

investigate the plaintiff's claims, depriving both the plaintiff and the defendant of

their statutorily created rights under 42 U.S.C. § 2000e-5.

The EEOC's termination of its investigation before it began does not deprive this Court of jurisdiction, but dismissal on this ground is proper under Rule 12(b)(6). *Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 606 n.3 (W.D. Va. 2019); *Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir. 2019).  Because the EEOC issued its right-to-sue notice prior to the expiration of the 180-day period set forth in 42 U.S.C. § 2000e-5(f)(1) and without conducting any investigation into the plaintiff's underlying claims, Counts III and IV should be dismissed and remanded to the EEOC for investigation.

V.   **PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ACCOMMODATE UNDER THE ADA (COUNT IV).**

To state a claim for failure to accommodate under the ADA, the plaintiff must show that: "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [BVUA] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [BVUA] refused to make such accommodations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015)*; Watson v. Fairfax Cty.,* 297 F. Supp. 3d 591, 606 (E.D. Va. 2018) *Anderson v. Sch. Bd.*, 2020 U.S. Dist. LEXIS 94645, at *34 (E.D. Va. 2020).

While the defendant does not concede that the plaintiff suffers from a COVID-related disability, for the purposes of this motion only, the plaintiff has

asserted sufficient facts to establish the first two elements of his failure to accommodate claim.  With respect to the third and fourth elements, however, the plaintiff's factual averments fall short.

With respect to the third element, the plaintiff has not shown that he could perform the essential elements of the job with reasonable accommodation.  As a preliminary matter, the plaintiff pleads that his employment was terminated for poor work performance.  As such, he was not performing the essential elements of the job.

With respect to the fourth element, the plaintiff does not plead any facts to show that BVUA denied any request that he made for an accommodation.  The only accommodations that his physician recommended were related to an alternative work schedule, limiting his shifts to 32 hours per week, and giving him additional time to complete tasks.  The plaintiff does not state that BVUA denied these requests.  Moreover, his factual averments establish that prior to Mr. Wood making an accommodation request under the ADA, BVUA granted his request to work only 20 hours each week under his intermittent FMLA request.  If BVUA permitted Mr. Wood to work only 20 hours per week, taking one full day off in the middle of the week to rest, it would stand to reason that BVUA would not deny a request that would allow Mr. Wood to work an additional 12 hours each week.

15

Mr. Wood also alleges that he requested permission to use supplemental oxygen at work.  He does not state that his request was denied.  Notably, this request was not recommended by his physician, who only stated that he was making a referral for Mr. Wood to see a pulmonologist to determine if supplemental oxygen was appropriate.  At the time that Mr. Wood made his request – which was not denied by BVUA – supplemental oxygen had not been recommended by any physician.

Because Mr. Wood failed to plead sufficient facts to state a claim for failure to accommodate under the ADA, the claim must be dismissed.

## VI.   PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION UNDER VIRGINIA CODE § 40.1-27.3 (COUNT V).

Plaintiff asserts that on March 30, 2021, he informed a member of BVUA management that another co-worker, identified as "JP," had been coming to work for a week while testing positive with COVID-19.  Compl. ¶ 28.  Plaintiff asserts that approximately a month later, he was given a negative performance evaluation in which his work productivity was rated as "poor."  *Id.* ¶ 39. Plaintiff asserts that almost two months later, on May 28, 2021, he was terminated by email.  *Id.* ¶ 52.

Plaintiff asserts that his negative performance evaluation and subsequent termination are in violation of Virginia Code § 40.1-27.3, which prohibits an employer from discharging, disciplining, threatening, discriminating against,

penalizing an employee, or taking any other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment because the employee in good faith reports a violation of any federal or state law or regulation to a supervisor.  He further asserts that the violation of law that he reported to management was JP's act of coming to work "while testing positive with COVID."  Compl. ¶ 99.  Plaintiff asserts, incorrectly, that JP's act of coming to work while testing positive for COVID constitutes a violation of 16 VAC 25-220-40.[4]

That section of the COVID regulations asserts mandatory requirements for employers; it does not contain any restrictions or prohibitions on the actions of employees.  Plaintiff asserts only that JP's act of coming to work "while testing positive with COVID" constituted a violation of the regulation.  The plaintiff's complaint is devoid of any allegations asserting that BVUA violated 16 VAC 25-220-40, that BVUA knew that JP had tested positive for COVID, that BVUA knew that JP was symptomatic or could otherwise infect others, or that BVUA permitted JP to remain at the workplace while possessing knowledge that JP had tested positive for COVID.  Indeed, if the plaintiff's other allegations are taken as true

---

[4] This regulation was adopted effective January 27, 2021, and repealed effective March 23, 2022.  Text of the regulation may be found at *Virginia Register* Volume 37, Issue 13.

(which they assuredly are not), JP would have had incentives not to share his positive COVID diagnosis with BVUA management.

The plaintiff does not assert any facts to establish that BVUA violated any provision of 16 VAC 25-220-40, and because 16 VAC 25-220-40, by its terms, does not proscribe any acts by employees, JP could not be in violation of that regulation. Accordingly, the plaintiff's report to management that an employee had tested positive for COVID does not constitute any protected activity under Virginia Code § 40.1-27.3, and plaintiff's claim for retaliation in violation of Virginia Code § 40.1-73 must be dismissed.

Moreover, with respect to the plaintiff's assertion that his negative performance evaluation violated Virginia Code § 40.1-73, plaintiff fails to assert that his performance evaluation constituted an adverse employment action regarding his compensation, terms, conditions, location, or privileges of employment, as required under section 40.1-73(A).

In the Fourth Circuit, a negative performance evaluation alone, without any accompanying injury or change in the terms or conditions of employment, is insufficient to constitute a materially adverse employment action in order to establish a cause of action for retaliation. *See Tang v. E. Va. Med. Sch.*, 2022 U.S. Dist. LEXIS 61092, at *19 (E.D. Va. Mar. 30, 2022); *Altman v. McHugh*, Civil Action No. 5:11cv00061, 2012 U.S. Dist. LEXIS 50474, at *78-79 (W.D. Va. Apr.

18

9, 2012); *see, e.g.*, *Parsons v. Wynne*, 221 F. App'x 197 (4th Cir. Mar. 9, 2007) (holding that neither an employee's negative "performance evaluation nor her removal from the alternate work schedule would have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'"); *Amaram v. Va. State Univ.,* 2008 U.S. Dist. LEXIS 26004, 2008 WL 876966, at *3 (E.D. Va. Mar. 31, 2008) (holding that the negative performance evaluation of a university professor was not an adverse employment action); *Fernandez v. Alexander*, 2007 U.S. Dist. LEXIS 63557, 2007 WL 2475870, at *1 (D. Md. Aug. 27, 2007), *aff'd*, No. 08-1118, 307 F. App'x 725, 2009 WL 59156 (4th Cir. Jan. 12, 2009), *cert. denied*, 556 U.S. 1283, 129 S. Ct. 2778, 174 L. Ed. 2d 272 (2009) (holding that the adverse employment actions alleged by the plaintiff, including receiving a "leave letter," performance evaluations that were not as good as the plaintiff wanted, the employer denying the plaintiff access to certain employment resources, and the employer complaining about the plaintiff in relation to his discrimination claims, were not material enough to dissuade a reasonable employee from pursuing a discrimination claim); *Watson v. Snow*, 2006 U.S. Dist. LEXIS 14447, 2006 WL 753185, at * 7 (M.D.N.C. Mar. 20, 2006), *aff'd as modified*, 229 F. App'x 205, 2007 WL 1062844 (4th Cir. Apr. 10, 2007) (holding that a negative performance evaluation was not enough to establish a retaliation claim because the employee

did not present any evidence that his title, pay grade, benefits, salary, or eligibility for bonuses or promotions were affected as a result of evaluation).

Without any allegation of fact to show that his negative performance evaluation had any impact on his compensation, terms, conditions, location, or privileges of employment, plaintiff fails to state a claim for retaliation related to his performance review. Accordingly, the plaintiff's complaint of retaliation related to his performance evaluation must be dismissed.

## VII. PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FRAUD AND ABUSE WHISTLE BLOWER PROTECTION ACT (COUNT VI).

Plaintiff asserts that his negative performance evaluation and subsequent termination also constitute a violation of the Fraud and Abuse Whistle Blower Protection Act, Virginia Code § 2.2-3009, *et seq*. ("FAWBPA"). "Virginia Code § 2.2-3011 only applies to persons compensated by state agencies." *Richardson v. Prince William Cty.*, 2018 U.S. Dist. LEXIS 12387, at *6 (E.D. Va. Jan. 24, 2018). As such, it does not apply to the plaintiff.

Moreover, the FAWBPA prohibits an employer from discharging, threatening, or otherwise discriminating or retaliating against a whistleblower who reports instances of wrongdoing or abuse committed by governmental agencies in good faith to appropriate authorities. Va. Code §§ 2.2-3009, 2.2-3011. Plaintiff

was not a whistle blower who reported misconduct to his supervisor or to an appropriate authority.

"Whistle blower" is defined to include "an employee who witnesses or has evidence of wrongdoing or abuse and who makes or demonstrates by clear and convincing evidence that he is about to make a good faith report of, or testifies or is about to testify to, the wrongdoing or abuse to one of the employee's superiors, an agent of the employer, or an appropriate authority."  Va. Code § 2.2-3010.

"Appropriate authority" includes "a federal, state, or local agency or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or abuse; or a member, officer, agent, representative, or supervisory employee of the agency or organization. The term also includes the Office of the Attorney General, the Office of the State Inspector General, and the General Assembly and its committees having the power and duty to investigate criminal law enforcement, regulatory violations, professional conduct or ethics, or abuse."  Va. Code § 2.2-3010.

"Wrongdoing" is defined as "a violation, which is not of a merely technical or minimal nature, of a federal or state law or regulation, local ordinance, or a formally adopted code of conduct or ethics of a professional organization designed to protect the interests of the public or employee." Va. Code § 2.2-3010.

Plaintiff asserts that he was a whistle blower for two different reasons: (1) because he reported that JP came to work with a positive COVID test to a member of management; and (2) because he filed an OSHA complaint related to JP coming to work with a positive COVID test on the day he was terminated.  The Complaint is conspicuously silent as to whether the OSHA complaint was made before or after he was terminated.  Both reports relate to alleged violations of 16 VAC 25-220-40.  Neither report asserts any claims of abuse under FAWBPA.

Plaintiff was not a whistle blower for reporting to management that his co-worker JP reported to work with a positive COVID test because JP reporting to work with a positive COVID test did not constitute "wrongdoing" as that term is defined under the FAWBPA.  As argued above, the plaintiff asserts that his colleague's conduct of going to work with a positive COVID test constituted a violation of 16 VAC 25-220-40, but that regulation applies only to requirements for employers, not to any purported requirements for employees.  As stated above, the plaintiff does not allege any facts to establish that BVUA took any actions in violation of 16 VAC 25-220-40.

Plaintiff was also not a whistle blower for purportedly making a report to OSHA on the day that he was terminated that his co-worker reported to work with a positive COVID test because (1) the employee reporting to work with a positive COVID test does not constitute wrongdoing under the Act; (2) OSHA is not an

22

"appropriate authority" as that term is defined in the Act; (3) plaintiff fails to allege a causal connection between his purported report to OSHA and his termination; and (4) plaintiff failed to allege facts to assert that he was acting in good faith based upon evidence of wrongdoing or abuse.

To be an appropriate authority under the FAWBPA under the facts alleged, the agency must have authority over regulatory violations of 16 VAC 25-220-40, which is a Virginia Department of Labor and Industry (DOLI) regulation enforced by the Virginia Occupational Safety and Health (VOSH) Program.  Plaintiff asserts that he made a report instead to OSHA.[5]  Compl. ¶¶ 51, 100, 109. OSHA – the Occupational Safety and Health Administration – is an arm of the United States Department of Labor.  They investigate and enforce federal regulations.  OSHA divested its enforcement authority to VOSH with the adoption of the Virginia Plan, which was initially approved in September of 1976.  *See* 29 CFR 1952.21.

Because a complaint made to OSHA related to a purported violation of a Virginia DOLI regulation would not have been made to an appropriate agency under FAWBPA, the plaintiff's claim fails.

---

[5] Notably, the plaintiff's purported report to OSHA was made *sixty-two (62) days* after he reported his co-worker for going to work with a positive COVID test to management and was not made until the day he was terminated.

Moreover, the plaintiff fails to assert any causal connection between his purported complaint to OSHA and his termination, which plaintiff alleges occurred on the same day.  *See* Compl. ¶¶ 50-51.  Plaintiff asserts that he made the complaint to OSHA and was terminated by email the same day.  *Id*. ¶ 51.  Other than the email that transmitted his termination letter, the plaintiff had no contact with BVUA that day.  The plaintiff fails to allege any facts to assert that BVUA was aware of an OSHA complaint at the time that he was terminated.  Assuming that such a complaint was indeed made, the plaintiff further fails to allege any facts to establish that BVUA would have known that he was the person to have made such a complaint.

Finally, the FAWBPA requires that the plaintiff act in good faith when filing a report of suspected violation.  "Good Faith Report" is defined as "report of conduct defined in this chapter as wrongdoing or abuse that is made without malice and that the person making the report has reasonable cause to believe it is true." Va. Code § 2.2-3010.

The plaintiff failed to allege that he acted in good faith.  The alleged complaint to OSHA was made on his date of termination, which was sixty-two days after he purportedly had knowledge that JP had been attending work with a positive COVID test.  The plaintiff does not allege that he made the OSHA complaint before he received BVUA's termination letter.  Based on the delay of

sixty-two days to make an OSHA report (that was only made on the day of his termination) that was related to conduct that did not constitute wrongdoing under the FAWBPA, the plaintiff fails to allege that his complaint to OSHA was made in good faith.  Moreover, the plaintiff must allege that he either witnessed the wrongdoing or had evidence of it.  His complaint fails as to both requirements.

Because the plaintiff fails to state sufficient facts to assert a violation of the FAWBPA, this claim must be dismissed.

<u>CONCLUSION</u>

For the foregoing reasons, defendant BVUA Authority, by counsel, requests that the claims against it be dismissed with prejudice and for such other and further relief that this Court deems appropriate.

Respectfully submitted,

BVU AUTHORITY (incorrectly sued herein as BRISTOL VIRGINIA UTILITY AUTHORITY)

 /s/  Jennifer D. Royer
                 Of Counsel

Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant

25

## CERTIFICATE

I hereby certify that on the 1st day of July, 2022, I have electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas E. Strelka, Esq.
L. Leigh R. Strelka, Esq.
N. Winston West, Esq.
Brittany M. Haddox, Esq.
Monica L. Mroz, Esq.
STRELKA EMPLOYMENT LAW
119 Norfolk Avenue, SW, Suite 330
Roanoke, Virginia 24011

/s/  Jennifer D. Royer
Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant

26