IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

| | |
|---|---|
| JAMES WOOD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:22-cv-18 |
| | ) |
| BRISTOL VIRGINIA UTILITY | ) |
| AUTHORITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

**<u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PURSUANT TO 12(b)(6)</u>**

COMES NOW, the Plaintiff, James Wood ("Plaintiff" or "Mr. Wood") and hereby presents this brief in opposition to Defendant, Bristol Virginia Utility Authority ("Defendant" or "BVU")'s motion to dismiss pursuant to Rule 12(b)(6). For the reasons stated below, Defendant's motion should be denied.

## I. Introduction

This matter arises from a former employment relationship between the parties. BVU is a political subdivision of the Commonwealth of Virginia, established under Code § 15.2-7200, *et seq.*, to provide public utility services in certain counties of Virginia and Tennessee. BVU's principal place of business is in Bristol, Virginia.

Mr. Wood was formerly employed as a GIS/Engineering Technician for BVU. After his termination in May of 2021, Ms. Wood has advanced claims against BVU pursuant to the Family Medical Leave Act ("FMLA", Counts I and II), the Americans with Disabilities Act ("ADA", Counts III and IV), and two state statutory claims: Virginia Code § 40.1-27.3 ("Whistleblower Act", Count V) and Virginia Code § 2.2-3009 *et seq.* ("Fraud and Abuse Act", Count VI). In his filed complaint, Mr. Wood has claimed that the Court has federal question jurisdiction over the federal claims and supplemental jurisdiction regarding the state law claims.

## II. Standard of Review

At the motion to dismiss stage, pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether sufficient facts have been pled in order to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (*citing Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007)). The Court need only look at the four corners of the complaint to determine sufficiency of the facts alleged, rather than "resolve contests surrounding the facts, merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Thus, the proper inquiry is "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The court must accept all of the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999).

### III. Summary of Pertinent Alleged Facts

In June 2016, Mr. Wood was hired by BVU as a GIS/Engineering Technician. (¶6 of filed Complaint, Dkt. No. 1). At all times during his employment, Mr. Wood exhibited exceptional work performance and could fulfill the essential functions of his job. (¶7). Throughout Mr. Wood's employment, Mr. Wood observed that BVU management retaliates against employees who report safety issues or violations of laws. (¶11). Mr. Wood also observed that BVU management disfavors and discriminates against employees who require medical or sick leave. (¶13).

#### A. BVU Disfavors COVID-19 Safety Measures and Employees with Disabilities In Need of Medical Leave

As alleged by Mr. Wood, during the onset of the COVID-19 pandemic neither management nor employees complied with regulations promulgated by the Virginia Department of Labor and Industry intended to safeguard workers from unnecessary infection. (¶14). BVU's discriminatory animus

3

towards employees requiring medical or sick leave broadened during the COVID-19 pandemic to include employees required to quarantine, causing BVU employees to avoid quarantine and flout regulations designed to protect them from infection. (¶15). Mr. Wood cited state regulations regarding maintaining safe working environments that were not followed at BVU. (¶¶16-21). Employees, fearful that they would be terminated for following Virginia regulations and CDC guidelines, felt compelled to return to work despite their COVID-19 symptoms and the risk of exposing others. (¶23).

Mr. Wood recounted how the working environment permitted a labor force that included COVID-19-positive employees. (¶¶24-26). Unfortunately, Mr. Wood also tested positive for COVID-19. (¶27). Mr. Wood's infection resulted in a severe case of COVID-19 which caused him to develop lifelong disabilities, often described as "Long COVID," a recognized disability under the ADA. (¶31). On April 14, 2021, Mr. Wood applied for FMLA leave. (¶33). Mr. Wood remained out of work until April 26, 2021, when he received a work release for a limited 20 hour per week schedule, which his health care provider determined would be "medically necessary" until May 10, 2021. (¶34).

### B. BVU Management Does Not Accept Mr. Wood's Medical Documentation

Upon his return to work, Mr. King, Water & Wastewater and GIS Manager, rejected Mr. Wood's temporary reduced work schedule contained in his medical release documents and FMLA paperwork. (¶35). BVU management asked Mr. Wood to make significant changes to his physician's recommendations. Mr. Wood was informed that he was required to ensure that his physician made specific and particularized changes within the time allotted, or he would be terminated from employment. (¶36).

On April 28, 2021, three days after he was released for work on a limited schedule and still requiring oxygen, Mr. Wood was called to BVU Human Resources and was informed that management believed his work productivity was "poor." He was given a negative performance evaluation. (¶39). On April 30, 2021, the BVU CEO determined that Mr. Wood would have to use all his sick time, prior to being eligible for FMLA leave. (¶41).

### C. Second Onset of COVID-19; Second Use of FMLA; Termination

On May 9, 2021, Mr. Wood was diagnosed with a second case of COVID-19. On May 10, 2021, Mr. Wood was directed by the Sullivan County Health Department to quarantine for 10 days. Mr. Wood applied for FMLA leave again in order to quarantine and recover. BVU rejected Mr. Wood's

5

FMLA paperwork because he claimed that Mr. Wood's medical diagnosis was too vague. (¶¶42-45). Mr. Wood subsequently reported to BVU Human Resources that the rejection of his medical leave request was due to the hostile work environment created and maintained by BVU against those with disabilities and those who require medical or sick leave. (¶46).

On May 20, 2021, Mr. Wood's physician faxed a medical note to BVU asking for Mr. Wood to be excused from work through May 28, 2021. (¶48). In the FMLA form submitted by Mr. Wood thereafter on May 21, 2021, Dr. James Schrenker noted that Mr. Wood "has had COVID twice [and was] still having cognition [and] endurance issues." The paperwork noted a referral to a pulmonologist for Mr. Wood's lung damage and stated that it was "medically necessary for [Mr. Wood] to work a reduced schedule" of 32 hours per week upon his return to work on May 28 until June 14, 2021. Dr. Schrenker further stated that "it will be medically necessary for [Mr. Wood] to be absent from work on an intermittent basis," noting that Mr. Wood could experience "episodes of incapacity" lasting between two and eight hours, which are estimated to occur 3-4 times per week for the next six months. Despite these limitations, Dr. Schrenker concluded that Mr. Wood "is able to perform all job functions but may require more time to complete tasks and work shorter days or weeks." (¶49).

On May 27, 2021, Mr. Wood contacted Ms. Biggs and requested that he be able to use supplemental oxygen at work. (¶50). On May 28, 2021, Mr. Wood filed an OSHA whistleblower complaint setting forth that he was harassed and retaliated against for reporting a co-worker coming to work while infected, his own positive COVID test, and the severe illness that followed. (¶51). On May 28, 2021, when Mr. Wood was to return to work on a modified work schedule, still while protected by intermittent FMLA leave, Mr. Bowman terminated Mr. Wood's employment by email. (¶52).

## IV.   Legal Analysis

### A. Mr. Wood's FMLA Claims (Counts I and II)

The FMLA provides covered employees with certain rights and protections, including "12 workweeks of leave during any 12-month period" for family-related reasons or for an employee's serious health condition that renders her unable to do her job. 29 U.S.C. § 2612(a)(1). After taking qualified leave, employees are entitled to return to their pre-leave job or an equivalent position. *Id.* § 2614(a)(1)(A)-(B). And an employer may not eliminate any accrued employment benefit when an employee takes qualified leave. *Id.* § 2614(a)(2).

Section 2615 of the Act prohibits two kinds of conduct: (1) an employer cannot "interfere with, restrain, or deny the exercise of or the attempt to

7

exercise, any right provided under this subchapter," *Id.* § 2615(a)(1); and (2) an employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter," *Id.* § 2615(a)(2). The first prohibition gives rise to "interference" or "entitlement" claims. *Waag v. Sotera Defense Solutions, Inc.*, 857 F.3d 179, 186 (4th Cir. 2017) (*quoting Yashenko v. Harrah's NC Casino Co.*, LLC, 446 F.3d 541, 546 (4th Cir. 2006)).

The regulations provide that interference with the exercise of an employee's rights would include, for example, refusing to authorize FMLA leave, discouraging an employee from using such leave, and manipulation to avoid responsibilities under the FMLA. *See* 29 C.F.R. § 825.220(b). The second prohibits retaliation or discrimination for opposing unlawful practices. *See id.* Mr. Wood has properly alleged both of these FMLA claims against BVU.

### 1. FMLA Retaliation (Count I)

To plead a claim for discrimination and retaliation under FMLA, a plaintiff must show that (1) he engaged in protected activity, (2) that the employer took adverse action against him, and (3) that the adverse action was causally connected to the plaintiff's protected activity. *Mercer v. Arc of Prince Georges Cty., Inc.*, 532 F. App'x 392, 398 (4th Cir. 2013). Prong (1)

8

is easily established as Mr. Wood exercised his right to FMLA leave (¶¶33, 42-45, 48). BVU terminated Mr. Wood's employment satisfying Prong 2 (¶52).

As it relates to causation, prong (3), temporal proximity alone satisfies the burden. The Fourth Circuit has found on numerous occasions that mere temporal proximity between the protected activity and the adverse employment action can establish the causation element. *See King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (two-and-one-half months sufficient to create temporal proximity); *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989) (three months sufficient to create temporal proximity); *Price v. Thompson*, 380 F.3d 209 (4th Cir. 2004) (nine to ten months sufficient to create temporal proximity); *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017) (three months sufficient to create temporal proximity). Indeed, the Supreme Court implicitly endorsed the temporal proximity basis in *Clark Cnty. School Dist. v. Breeden*, 532 U.S. 268 (2001) (temporal proximity must be "very close").

Here, Mr. Wood exercised his rights to utilize FMLA leave at multiple times. As provided in the Complaint, Mr. Wood most recently submitted an FMLA form on May 21, 2021, a week before he was terminated. (¶49) Moreover, at the time of his termination from employment, he still had active

9

use of intermittent FMLA leave. (¶52). Thus, temporal proximity establishes the third prong required for Count I.

### 2. FMLA Interference (Count II)

To plead a claim for interference under the FMLA, a plaintiff must allege that "(1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Denial of FMLA leave constitutes interference. *Edusei v. Adventist HealthCare, Inc.,* Civil Action No. DKC 13-0157, 2014 U.S. Dist. LEXIS 91956, at *21 (D. Md. July 7, 2014); 29 C.F.R. § 825.220(b) ("Any violations of the [FMLA] or of [its governing] regulations constitute interfering with … the exercise of rights provided by the [FMLA].").

Just as in *Adams*, here the Plaintiff, Mr. Woods, was granted medical leave pursuant to the FMLA. The plaintiff in *Adams* asserted that his employer took adverse employment actions against him, which interfered with his FMLA rights by discouraging the taking of leave. The *Adams* Court considered 29 C.F.R. § 825.220(b) to reach the conclusion that the plaintiff had properly pled an interference claim. As provided in the Federal Register:

> (b) Any violations of the Act or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act. An employer may be liable for compensation and

10

> benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered. See § 825.400(c). Interfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave.

In the instant matter, Mr. Wood alleged that BVU terminated his employment very soon after use of FMLA leave and while he had active intermittent FMLA. (¶¶49 and 52). Such activity on the part of BVU could easily be considered interference of Mr. Wood's FMLA rights. Additionally, BVU rejected Mr. Wood's FMLA paperwork earlier in the month of May, 2021, an act that could be construed in the light most favorable to Mr. Wood as an act to deter or discourage the valid exercise of rights under the FMLA. And like the plaintiff in *Edusei*, Mr. Wood's request for additional leave very soon before termination constituted FMLA interference. Mr. Wood has sufficiently pled both of his FMLA claims.

## B. ADA Claims (Counts III and IV)

### 1. Mr. Wood = a "Qualified Individual with a Disability"

Mr. Wood was a "Qualified Individual with a Disability" pursuant to the ADA. One is within the ADA's protected class if one is a "qualified individual with a disability." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696,

11

702 (4th Cir. 2001) (*quoting* 42 U.S.C. § 12112) (internal quotations omitted)). Under the ADA, a "qualified individual" is one who, "with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). A "disability" is defined under the ADA as (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. *Id.* § 12102(1); *see also Harris v. Reston Hosp. Ctr.*, LLC, 2013 U.S. App. LEXIS 8323, 18-19 (4th Cir. 2013).

  Allegations in the Complaint that describe Mr. Wood's "long COVID" medical condition can be found at paragraphs 27, 31, 39,and 49. Mr. Wood suffered from exhaustion, difficulty breathing, and "episodes of incapacity". Mr. Wood has clearly pled that daily life activities were affected. All of this information was provided in writing to BVU. (¶¶48-49). Further, Mr. Wood inquired with BVU management regarding his possible use of supplemental oxygen at the worksite. (¶50). Thus, Mr. Wood has established at the pleading stage that he was a qualified individual with a disability pursuant to the ADA.

### 2. ADA Discrimination (Count III)

The ADA provides, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Covered entity" is defined as "an employer, employment agency, labor organization, or joint labor-management committee." *Id.* § 12111(2). "Employer" is defined as "a person engaged in an industry affecting commerce who has 15 or more employees . . . , and any agent of such person[.]" *Id.* § 12111(5)(A). BVU does not dispute that it is a "covered entity" and former "employer" of Mr. Wood as those terms are used by the ADA.

To establish a *prima facie* case of discrimination under the ADA, the Plaintiff is required to produce evidence sufficient to demonstrate that (1) he was a qualified individual with a disability; (2) he was terminated from employment; (3) he was fulfilling his employer's legitimate expectations at the time of discharge; and (4) the circumstances of his discharge raise a reasonable inference of unlawful discrimination. *Reynolds v. Am. Nat'l Red Cross*, 701 F.3d 143, 150 (4th Cir. 2012) (*citing Rohan v. Networks*

*Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004) (internal quotation marks omitted)).

Prongs (1) and (2) of an ADA discrimination claim have been established and described above. Prong (3) questions how Mr. Wood described his work performance in the pleadings. A true examination of the evidence regarding Mr. Wood's work performance would require the discovery process. As this matter is in the pleadings stage, the Court must examine the allegations regarding his work performance as described in the pleadings:

- At all times during his employment Mr. Wood exhibited exceptional work performance. (¶¶7, 59, 79, 91).
- Mr. Wood only experienced negative feedback from his employer soon after he had requested medical leave and made a complaint at the workplace. (¶39, 101).
- Mr. Wood's physician stated in writing that Mr. Wood "is able to perform all job functions" but might require more time to complete his tasks. (¶49).

Other than his use of medical leave and requests for accommodations, the pleadings are silent as to any deviation from policy or alleged mistake on the part of Mr. Wood. No allegations exist currently within the record that

demonstrate that Mr. Wood engaged in any sort of misconduct at the workplace. The facts as alleged in the light most favorable to Mr. Wood, illustrate that he was at least meeting expectations and thus has established prong (3) of ADA discrimination.

Prong (4) is a causation prong and as described above, temporal proximity provides all that is required of Mr. Wood's allegations to satisfy the requirements of a *prima facie* case of ADA discrimination.

### 3. ADA Failure to Accommodate (Count IV)

To establish a *prima facie* case for failure to accommodate under the ADA, Mr. Wood must show (1) he is an individual with a qualifying disability, (2) BVU knew of his disability, (3) Mr. Wood could accomplish the essential functions of his position if provided reasonable accommodation, and (4) BVU refused to make the reasonable accommodation. *Reyazuddin v. Montgomery Ctny, Md.*, 789 F.3d 407, 414 (4th Cir. 2015); *Wilson v. Dollar General Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

As described above, Mr. Wood has clearly pled prongs (1), (2), and (3) of his ADA failure to accommodate claim. As alleged in paragraphs 45, 49, 50, and 52, Mr. Wood's FMLA paperwork was rejected by BVU; Mr. Wood's requests for a modified work schedule which included time for "episodes of incapacity" was rejected by BVU; and Mr. Wood was terminated before he

received an answer from BVU regarding his request to use supplemental oxygen at the workplace. All of this establishes prong (4) of Mr. Wood's ADA failure to accommodate claim.

## C. Whistleblower Act Retaliation (Count V)

Pursuant to the Virginia Whistleblower Act:

> A. An employer shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee:
>
> 1. Or a person acting on behalf of the employee in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official;

Va. Code § 40.1-27.3.

As pled, Mr. Wood engaged in protected activities pursuant to the Whistleblower Act:

- In early/mid-May of 2021, Mr. Wood reported to BVU that the rejection of his valid medical leave request was due to a hostile environment created and maintained by BVU against those with disabilities. (¶46).

- Mr. Wood repeated this complaint to a BVU board member. (¶47).

- On May 28, 2021 filed an OSHA whistleblower complaint regarding his the deficiencies in BVU's actions regarding COVID in the workplace and retaliation for reporting it. (¶51).

All of these protected acts occurred in the same month as Mr. Wood's termination from employment creating a strong causal link at the pleading phase of litigation. Specific regulations regarding proper handling of COVID at the workplace - - highlighted due to BVU's deficient actions despite its duties otherwise - - are cited in paragraphs 16, 17, 18, 19, 20, and 21. Mr. Wood has clearly pled a claim pursuant to Virginia's Whistleblower Act.

### D. Fraud and Abuse Act Retaliation (Count VI)

Pursuant to Va. Code. § 2.2-3009,

> It shall be the policy of the Commonwealth that citizens of the Commonwealth and employees of governmental agencies be freely able to report instances of wrongdoing or abuse committed by governmental agencies or independent contractors of governmental agencies.

Similarly, pursuant to Va. Code. § 2.2-3011,

> A.   No employer may discharge, threaten, or otherwise discriminate or retaliate against a whistle blower whether acting on his own or through a person acting on his behalf or under his direction.

As described above, Mr. Wood complained to human resources, management, and OSHA regarding "instances of wrongdoing" of BVU, a

17

political subdivision of the state of Virginia. (¶¶46, 47, 51). All of these protected acts occurred in the same month as Mr. Wood's termination from employment creating a strong causal link at the pleading phase of litigation. Mr. Wood has clearly pled a claim pursuant to Virginia's Fraud and Abuse retaliation Act.

## CONCLUSION

For the reasons stated above, BVU's motion to dismiss pursuant to Rule 12(b)(6S) should be denied.

Respectfully submitted,

**JAMES WOOD**

By /s Thomas E. Strelka

Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB #65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
brittany@strelkalaw.com
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

On the 29th day of July, 2022, the undersigned counsel for Mr. Wood filed this mater on the Court's CM/ECF filing system which transmitted a Notice of Electronic Filing to:

Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant

/s/ Thomas E. Strelka