IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

| | |
|---|---|
| JAMES WOOD, | ) |
|       *Plaintiff*, | ) |
| v. | ) Case No. 1:22cv18 |
| BRISTOL VIRGINIA UTILITY AUTHORITY, | ) |
|       *Defendant*. | ) |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Defendant, BVU Authority, incorrectly sued herein as Bristol Virginia Utility Authority (hereinafter "BVUA" or the "Authority"), by counsel, submits this reply memorandum in support of its motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

ARGUMENT

I. PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION IN VIOLATION OF THE ADA (COUNT I).

The plaintiff asserts that he was engaged in the protected activity of taking FMLA leave and that he was subsequently terminated, but he fails to assert any facts to establish a causal connection between the two events. He attempts to rely on temporal proximity to establish a causal connection. His complaint, however, also states that he applied for and received time off under the FMLA – not just

once but twice – and that he was given an unsatisfactory work evaluation for "poor" work performance a month before he was terminated. (Compl. ¶¶ 39, 52.)

His complaint is silent as to the stated reasons for either his negative performance evaluation or his termination, leaving the Court and the Defendant to fill in the blanks.[1]  FMLA does not prohibit an employer from disciplining an employee with performance issues, providing negative performance evaluations to an employee with performance issues, or terminating an employee related to performance issues. *See, e.g.*, *Cooper v. Thomson Newspapers, Inc.*, 6 F. Supp. 2d 109, 114 (D.N.H. 1998).  If it did, no employer would ever be able to manage an effective workforce so long as employees with work performance issues could take job-protected leave and cry retaliation thereafter.

---

[1] Plaintiff even acknowledges that he intentionally omitted the reasons for his negative performance evaluation and subsequent termination in his pleading so that his allegations of satisfactory work performance would be entitled to deference, stating that "Other than his use of medical leave and requests for accommodations, *the pleadings are silent as to any deviation from policy or alleged mistake* on the part of Mr. Wood.  *No allegations exist currently within the record that* demonstrate that *Mr. Wood engaged in any sort of misconduct* at the workplace." Br. in Opp., p. 14-15 (emphasis added).  Had Mr. Wood included his seven-page termination letter in the Complaint, such allegations would defeat his claims.

In acknowledging that he was terminated a month after receiving a poor work performance evaluation, the plaintiff defeated his claim of a causal connection between his termination and his FMLA leave.

Without a causal connection between his FMLA leave and his termination, the plaintiff's claim for retaliation fails and must be dismissed.

II.     PLAINTIFF FAILS TO STATE A CLAIM FOR INTERFERENCE WITH FMLA RIGHTS (COUNT II).

The "purpose of [an interference claim] is to permit a court to inquire into matters such as whether the employee would have exercised his or her FMLA rights in the absence of the employer's actions." *Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 91 (2002)).

The plaintiff fails to state facts to demonstrate that BVUA interfered with his FMLA rights. Without question, the plaintiff applied for and received FMLA leave, not just once but twice within a sixty-day period. He also received intermittent leave between those two periods of reported illness. The plaintiff does not dispute that he received every benefit available to him under the law. He does not assert that he was discouraged from taking FMLA leave or otherwise failed or refused to take leave that was available under the FMLA because of any action of his employer.

3

Plaintiff's issues instead relate to his employer's exercise of its rights to confirm the plaintiff's eligibility for FMLA leave, to require him to complete the necessary paperwork correctly and completely, to complete a fitness for duty certification prior to return to work, to clarify his employer's limitations on the plaintiff's return to work, and to inform the plaintiff that he could be terminated for not completing a new medical certification or fitness for duty certification upon the expiration of his FMLA leave. *See, e.g.,* 29 C.F.R. §§ 825.305(a), (c), and (d); 825.306(a), (c), and (d); 825.307(a); 825.312; and 825.313(d). Such actions, which an employer has the right to take under FMLA's regulations, do not constitute interference with his rights.

Because the plaintiff fails to state a claim for interference with his FMLA rights, Count II should be dismissed.

III. PLAINTIFF'S ADA CLAIMS MUST BE REMANDED TO THE EEOC FOR INVESTIGATION (COUNTS III AND IV).

Plaintiff ignored the Defendant's argument that the ADA claims must be remanded to the EEOC for investigation. As such, this Court may consider such defense to be admitted and remand the ADA claims to the EEOC. During such time that the ADA claims are properly solely within the purview of the EEOC, the Court should stay any of the plaintiff's claims that remain after disposition of the defendant's motions to dismiss.

IV.  PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO ACCOMMODATE UNDER THE ADA (COUNT IV).

In his Complaint and memoranda, the plaintiff acknowledges that he was given a negative performance evaluation for his poor work performance a month before he was terminated. He also concedes that he purposefully did not include in his Complaint BVUA's written reasons for terminating him because they establish that Mr. Wood engaged in misconduct at the workplace and violated numerous BVUA policies and state law. As such, Mr. Wood does not assert sufficient facts to establish that he was meeting his employer's legitimate expectations by performing the essential functions of the job or that he could perform the job with or without reasonable accommodations.

Furthermore, the plaintiff's pleadings fail to show that BVUA denied *any* request that he made for an accommodation. BVUA accommodated his request for an alternative work schedule, limiting his shifts to 20 hours per week, giving him a complete day of rest between workdays, and giving him additional time to complete tasks. BVUA also granted his request to work only 32 hours each week under his intermittent FMLA request.

Mr. Wood also alleges that he requested permission to use supplemental oxygen at work, and that request was <u>not</u> denied. Notably, this request was not recommended by his physician, who only stated that he was making a referral for

5

Mr. Wood to see a pulmonologist to determine if supplemental oxygen was appropriate. At the time that Mr. Wood made his request, supplemental oxygen had not been recommended by any physician as an accommodation.

Because Mr. Wood failed to plead sufficient facts to state a claim for failure to accommodate under the ADA, the claim must be dismissed.

V.     PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION UNDER VIRGINIA CODE § 40.1-27.3 (COUNT V).

Plaintiff does not deny that his co-worker's act of allegedly coming to work with COVID does not violate any law or that BVUA's actions with respect to COVID mitigation strategies did not violate any law. Plaintiff also now abandons his claim that his negative performance evaluation violated Virginia Code § 40.1-73. Instead, the plaintiff shifts his focus to assert that he reported that the "rejection" of his medical leave request (which he tacitly admits was not actually rejected by his employer at all since he received FMLA leave, intermittent leave, and ADA accommodations as pled in his Complaint) was due to a hostile work environment and that such activity is entitled to whistleblower protection under the Virginia Whistleblower Act.

On their face – giving Mr. Wood the benefit of the doubt as is required at this stage of the proceedings – such allegations are not made in good faith as required by the Whistleblower Act. Mr. Wood received the FMLA benefits to

which he was entitled under the law. BVUA exercised its rights to seek clarification of Mr. Wood's leave status and fitness for duty under the law. Complaining that BVUA was exercising the rights available to it under the law does not constitute a good faith report of any violation of federal, state, or local law and certainly does not make Mr. Wood a "whistleblower."

Furthermore, Mr. Wood's allegation that he reported this "hostile work environment" to a member of the Board of Directors does not support a claim for whistleblowing as members of the Board of Directors are not his supervisors under the law.

Under the BVU Authority Act, "the Board shall deal with Authority employees solely through the president. The Board shall not give orders to any of the subordinates of the president, either publicly or privately." Va. Code § 15.2-706(A)(6). "The Board shall not direct the appointment or removal of any Authority contractor or employee other than the president." *Id*. § (A)(7). Moreover, under the Act, "the president shall have the sole authority to hire, fire, and manage such staff and contractors as the president deems expedient to the operation of the Authority, subject to the availability of budgeted funds, and to assign such positions, titles, powers, and duties at such salaries as the president deems most effective for the efficient operation of the Authority." *Id*. § 15.2-7206 (B)(4). Discussing his issues with a member of the Board of Directors would not

be protected activity under the Whistleblower Act as Board members lack any supervisory authority over the plaintiff.

Because the plaintiff fails to state a claim under the Virginia Whistleblower Act, Count V must be dismissed.

VI.     PLAINTIFF FAILS TO STATE A CLAIM UNDER THE FRAUD AND ABUSE WHISTLE BLOWER PROTECTION ACT (COUNT VI).

Plaintiff's only response to this defense is that he "complained to human resources, management, and OSHA regarding 'instances of wrongdoing' of BVU," but as stated in BVUA's memorandum, making such complaints (assuming they were made at all) is not sufficient to state a claim under the FAWBPA as (1) the plaintiff is not a "whistleblower" because (2) his complaints were not made in "good faith" and (3) related to "wrongdoing" or (4) made to an "appropriate authority" as such terms are defined under the FAWBPA.

In his response, the plaintiff does not clarify what actions he believes to constitute "instances of wrongdoing" for the purpose of this Act or show that he either witnessed such wrongdoing or reported it in good faith. To the extent that the report relates to his co-worker's purportedly reporting to work with COVID, such activity does not constitute "wrongdoing" under the Act. To the extent that he now claims that the wrongdoing was related to BVUA's requests for more information related to his FMLA paperwork, as asserted above, BVUA was within

8

its rights under the law to seek such information from him to process his FMLA and ADA requests. As such, the conduct is not "wrongdoing" as defined under the FAWBPA, and a report made unrelated to such conduct could not be made in good faith.

The plaintiff also does not deny that OSHA was not the appropriate authority for his COVID complaints under the FAWBPA.

Further, the plaintiff does not attempt to address the absence of a causal connection between such purported reports and his termination. As asserted in the Complaint, with respect to the OSHA complaint (assuming complaining to OSHA could qualify as a whistleblower report under the facts pled), the plaintiff was terminated on May 28, 2021, when he was to return to work. Compl. ¶ 52. Plaintiff does not assert that he made the complaint to OSHA before he was terminated or allege that BVUA was aware that he had made any such report. As such – even if the report to OSHA could constitute a report under the FAWBPA – there would be no causal connection between his termination and a report to OSHA.

Finally, making an OSHA complaint the day you are terminated related to actions that do not constitute wrongdoing under the FAWBPA (related to either his claims of a hostile work environment or his claims related to his co-worker

9

purportedly reporting to work with COVID) does not constitute a good faith report under the FAWBPA.

Because the plaintiff fails to state sufficient facts to assert a violation of the FAWBPA, Count VI must be dismissed.

## CONCLUSION

For the foregoing reasons, defendant BVUA Authority, by counsel, requests that the claims against it be dismissed with prejudice and for such other and further relief that this Court deems appropriate.

Respectfully submitted,

BVU AUTHORITY (incorrectly sued herein as BRISTOL VIRGINIA UTILITY AUTHORITY)

 /s/  Jennifer D. Royer
          Of Counsel

Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant

## CERTIFICATE

I hereby certify that on the 12th day of August, 2022, I have electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas E. Strelka, Esq.
L. Leigh R. Strelka, Esq.
N. Winston West, Esq.
Brittany M. Haddox, Esq.
Monica L. Mroz, Esq.
STRELKA EMPLOYMENT LAW
119 Norfolk Avenue, SW, Suite 330
Roanoke, Virginia 24011

/s/  Jennifer D. Royer
Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant