# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## Abingdon Division

| | |
|---|---|
| **JAMES WOOD,** | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:22-cv-18 |
| **BRISTOL VIRGINIA UTILITY AUTHORITY,** | ) |
| Defendant. | ) |

## PLAINTIFF'S FINAL BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURSIDICTION

COMES NOW, the Plaintiff, James Wood ("Plaintiff" or "Mr. Wood") and hereby presents this brief in opposition to Defendant, Bristol Virginia Utility Authority ("Defendant" or "BVUA")'s motion to dismiss for lack of subject matter jurisdiction. Pursuant to the Court's October 12, 2022, Order, the parties engaged in limited discovery to provide further details to this Court on the issue of the application of sovereign immunity. For the reasons stated below, BVUA's motion should be denied.

**A. BVUA's Filed Evidence**

BVUA filed several exhibits with this Court - - beginning at (Dkt. #18-1) - - in purported support of its assertion that the Court should apply

1

sovereign immunity. The following information is contained within Defendant's submitted evidence and is relevant to the matters at hand:

1. **Declaration of CEO Bowman (Dkt. #18-1)**

    a. "BVUA is a **unique entity** created by the Virginia General Assembly to oversee . . ." (¶4, emphasis added).

    b. "BVU currently funds its operating expenses through rates and fees charged by BVUA for its services." CEO Bowman admits that no line-item appropriation from the Commonwealth's budget provides funding to the BVUA (¶23).

2. **BVUA Auditor's Report (Dkt. #18-2)**

    a. Details 56 recommendations for **internal governance** as necessary checks and balances following corruption of BVUA leadership. None of these 56 recommendations advised greater state control, management, or funding of BVUA.

    b. All 56 recommendations regarded internal changes to be made at BVUA so that BVUA could self-manage in the future without worry of criminal activity.

    c. Most 56 recommendations follow best practices and principles for ethically run businesses regardless of affiliation with any government.

d. "Implementing **strong internal controls** is the first step to eliminating the opportunity for fraud to occur." (Pg. 9, Dkt. #18-2)(emphasis added).

e. Recommendation 15 (Pg. 38, Dkt. #18-2) provides guidance for BVUA to maintain its own cash reserves to cover all operating expenses. None of these funds are state funds.

> *Recommendation 15:*
> *The BVU Authority should establish the subordinate debt service, repair and replacement, and general reserve funds as outlined in the indenture and ensure cash within those funds meets minimum reserve requirements and targets. Further, the BVU Authority should develop and implement policies and procedures over the budgeting process to ensure the budget is prepared in accordance with each requirement of the indenture, is provided to the trustee in advance of the fiscal year, and incorporates any anticipated reductions to revenue, such as discounts and commissions. BVU Authority should incorporate cash reserves in the annual budget in addition to operating expenses. This should be a significant consideration when developing recommendations for changes in utility rates. The BVU Authority should set rates that cover all operating and debt expenses to ensure each utility is self-supporting. Finally, the BVU Authority should obtain all necessary approvals for all rate changes prior to the date the changes take effect. Implementing these recommendations will reduce the risk of any event of default of the bonds.*

f. Recommendation 40 outlines guidance regarding BVUA's ability to make charitable donations. Va. Code § 15.2-7212 provides restrictions for "localities" regarding these donations. Because BVUA was not a locality, it previously did not believe that this section of the Virginia Code applied to BVUA. However, the auditor makes other recommendations including that **even though BVUA is not a city or town, for purposes of charitable donations under Va. Code § 15.2-7212, it**

3

**should be considered as such and therefore not make charitable donations in the future.** (Pg. 70, , Dkt. #18-2).

**B. BVUA's Responses to Interrogatories**

Plaintiff submitted interrogatories to BVUA.  BVUA responded and those responses have been appended to this Brief as **EXHIBIT A**.  BVUA's responses were provided and sworn by current CEO Donald Bowman.  Notable responses included the following relevant information:

- The President of BVUA - - not the Commonwealth of Virginia - - hires all employees of BVUA.  (Response to Int. 2).

- Other than the BVUA Authority Act, the Commonwealth of Virginia "has not delegated" control or authority to manage the BVUA "to other departments or boards." (Response to Int. 3).

Page 10 of BVUA's brief (Dkt. #18) provided the following contention:

IV. **BVUA IS CONCERNED WITH REGIONAL CONCERNS, NOT JUST LOCAL CONCERNS.**

The third *Cash* actor is whether the entity is concerned with local or statewide concerns. *Cash*, 242 F.3d at 224. While BVUA has business interests that could open it to the statewide marketplace, the General Assembly provided specific territorial restrictions on BVUA under the 2016 amendment to the BVUA Act. Va. Code §15.2-7207. Under the Act, BVUA is authorized to operate in Virginia and Tennessee, and the type of services it provides depends upon the jurisdictions within those states. BVUA serves multiple localities and is involved in operations in two states. While not state-wide in activities, BVUA provides regional services. It is not limited to local concerns of a locality.

(emphasis added).

Plaintiff considered BVUA's assertion in its brief and through discovery questioned the breadth of BVUA's authority from the perspective of its chief executive. Interrogatory 4 requested BVUA to "detail any 'business interest that could open [Defendant] to the statewide marketplace."

**ANSWER:** In the absence of state control, BVUA could offer its existing services statewide and could also provide home security services, child monitoring software for parents, cable television, phone, and internet and enter new areas such as distributed energy resources.

The notable words used in this response (as in the original brief) are the words "absence of state control" and "could".

First, in response to this interrogatory, BVUA describes hypothetical - - or at the least, <u>unused</u> - - authority to provide statewide services. It has never provided statewide services and currently does not do this. Further, this response admits that "an absence of state control" exists allowing BVUA to seemingly enter into numerous industries willy-nilly. This argument is clearly a double-edged sword for the BVUA. They contend on one hand that they *potentially* could exercise a greater geographic influence into other services, but this is only a result of an "absence of state control" according to the current BVUA CEO. This "absence of state control" disfavors the application sovereign immunity.

### C. BVUA's Responses to Plaintiff's Requests for Admission

BVUA's responses to Plaintiff's requests for admission have been appended to this brief and made a part hereof as **EXHIBIT B**.
Notable responses include the following:

> 1. Admit that no fund maintained by the Commonwealth of Virginia would directly pay any judgment in this matter.
>
> **RESPONSE:** **Admitted.**

6. Admit that the General Assembly provided Defendant all powers reasonably necessary or appropriate to provide electric, water, sewer, and telecommunication and related services.

> **RESPONSE:** Defendant admits that the General Assembly provides the Defendant with the powers to provide the services that the General Assembly authorizes it to provide under the Act. For example, in exercising direct control over BVUA, the General Assembly passed specific additional legislation to exempt parts of the sale of BVUA's assets from the Virginia Public Procurement Act so that BUV Authority could complete that transaction.

## ANALYSIS

There exists no guidance from the Supreme Court of Virginia as to the specific issue of application of sovereign immunity to the BVUA. However, authority that Plaintiff has cited in briefs and underscored by the evidence as detailed above provides sufficient guidance to this Court to deny BVUA's motion.

Consider:

1. Va. Code § 15.2-7207 explicitly provides that suits against BVUA should list BVUA by name as a party and not the Commonwealth of Virginia.

2. Recent legislation enacted by the Virginia General Assembly provided a framework of checks and balances to the BVUA for stronger and more responsible self-management. This is not state control. By way of analogy, the Commonwealth of Virginia is like a mother bird that wishes the BVUA to spread its wings and take flight upon its own strength. The great discretion

afforded the BVUA is tempered by the lessons and principles "taught" by the Commonwealth, i.e., the mama bird.

3. As the U.S. Supreme Court has opined on the issue of whether a political subdivision may be covered by sovereign immunity, the only factor singled out as "of considerable importance" is whether the state is "obligated to bear and pay [any potential legal] indebtedness of the defendant." *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994). It is clear from the evidence submitted before the Court that the Commonwealth of Virginia shall pay no judgment related to this case.

The parties can at least agree that guidance on this issue related specifically to BVUA is limited or nonexistent. Should this Court wish to certify a question on this issue to the Supreme Court of Virginia for further guidance, Plaintiff has no objection and indeed supports such an inquiry.

## CONCLUSION

For the reasons stated above, BVU's motion to dismiss pursuant to Rule 12(b)(1) should be denied.

>Respectfully submitted,
>
>**JAMES WOOD**
>
>By /s Thomas E. Strelka

        Thomas E. Strelka, Esq. (VSB# 75488)
        L. Leigh R. Strelka, Esq. (VSB # 73355)
        N. Winston West, IV, Esq. (VSB # 92598)
        Brittany M. Haddox, Esq. (VSB # 86416)
        Monica L. Mroz, Esq. (VSB #65766)
        STRELKA EMPLOYMENT LAW
        Warehouse Row
        119 Norfolk Avenue, S.W., Suite 330
        Roanoke, VA  24011
        Tel:  540-283-0802
        brittany@strelkalaw.com
        thomas@strelkalaw.com
        leigh@strelkalaw.com
        winston@strelkalaw.com
        monica@strelkalaw.com

        *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

On the 30th day of December, 2022, the undersigned counsel for Mr. Wood filed this mater on the Court's CM/ECF filing system which transmitted a Notice of Electronic Filing to:

Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant

/s/ Thomas E. Strelka

10