IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Abingdon Division

| | |
|---|---|
| JAMES WOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:22cv18 |
| ) | |
| BRISTOL VIRGINIA UTILITY ) | |
| AUTHORITY, ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

Defendant, BVU Authority, incorrectly sued herein as Bristol Virginia Utility Authority (hereinafter "BVUA"), by counsel, submits this reply memorandum in support of its motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

ARGUMENT

In determining whether BVUA is an arm of the state entitled to Eleventh Amendment immunity, the Court considers the four factors enunciated in *Cash v. Granville County Board of Education*, 242 F.3d 219, 222 (4th Cir. 2001). BVUA previously addressed the four *Cash* factors in its Response to Order [Dkt. 18] and incorporates its arguments on those factors here.

After having an opportunity to engage in discovery on the issue of BVUA's Eleventh Amendment immunity, the plaintiff filed its Final Brief in Opposition, focusing on the Commonwealth's exercise of control over BVUA, whether the judgment would be paid from the Commonwealth's treasury, and the scope of BVUA's business concerns. The plaintiff admits that he has no evidence to defeat BVUA's claim of immunity, and indeed, cites to discovery responses that support BVUA's claim.

Virginia state and federal laws and BVUA's evidence production support a finding that BVUA is entitled to Eleventh Amendment immunity for the purpose of the plaintiff's self-care claims under the FMLA, and the plaintiff's self-care claims should be dismissed.

I. PLAINTIFF CONCEDES STATE CONTROL.

As established in *Workman v. Mingo County Schools*, when the state intervenes in the operation of an entity (even one that might not otherwise be entitled to Eleventh Amendment immunity), removing the members of the governing board, and limiting the entity's power, the entity becomes an arm of the state entitled to Eleventh Amendment immunity. 667 F. Supp. 2d 679 (S.D. W. Va. 2009).

Under the facts before this Court, the Commonwealth of Virginia exercised such control over BVUA through the adoption of legislation that dictates who sits

on the BVUA Board, limits the BVUA Board's powers, and controls how BVUA can spend its money and govern its organization. Even the plaintiff, in his Final Brief, concedes that the Commonwealth exercises significant control over BVUA.

Plaintiff describes the Commonwealth as a "mama bird" that, through legislative restrictions and interventions – or what the plaintiff describes as "a framework of checks and balances" – provides BVUA with the "power to take flight." Memo p. 7. To the extent that the analogy accurately describes the power that a parent would have over a child to control the child's actions and to limit the child's self-governance, the analogy is apt. The analogy acknowledges the Commonwealth's control over BVUA.

In support of this analogy, the plaintiff highlights defendant's discovery responses, which provide proof of significant state control. For example, the plaintiff focuses on the recommendations from the state audit.[1] Included among the Auditor of Public Accounts' recommendations was a recommendation for how BVUA should develop changes in utility rates, including advising BVUA to "obtain all necessary approvals for rate changes prior to the date the changes take

---

[1] It bears repeating that the Commonwealth does not ordinarily audit municipalities in this manner, but the Commonwealth both sought and paid for this audit of BVUA.

effect," in order to "reduce the risk of any event of default of the bonds." Memo, p. 3; Bowman Decl. ¶ 25. This recommendation protects the Commonwealth's interests in not being liable in the event of a BVUA default on its financial obligations.

The plaintiff recognizes that BVUA was not prohibited under Virginia law from making charitable donations until the General Assembly amended the BVU Authority Act to prohibit BVUA from making such donations.[2] The plaintiff admits that BVUA "was not a locality" and acknowledges that the laws that govern a locality's ability to make charitable donations do not apply to BVUA. Memo, p. 3-4. A separate law governing BVUA's ability to make charitable donations would not be necessary if BVUA was, in fact, a municipality and governed by the laws generally applicable to municipalities.

The plaintiff also highlights BVUA's responses to its requests for admission in which BVUA admits that its authority to provide utility services is derived from and limited by the Commonwealth and that, when necessary, the Commonwealth even adopted special legislation to permit BVUA to complete the sale of its assets.

---

[2] Plaintiff's references to Virginia Code § 15.2-7212 as the authority for localities to make charitable donations is mistaken. Section 15.2-7212 instead makes BVUA subject to the Virginia Public Procurement Act.

4

Memo, p. 7.  Such legislation demonstrates the Commonwealth's control over BVUA's operations.

Other examples of the state's exercise of control over BVUA may be found with greater specificity in the Declaration of Donald Bowman and in the discovery responses that the plaintiff attached to its Final Brief.  Given the Commonwealth's significant level of control over BVUA's Board and operations, the second *Cash* factor is amply met by the facts of this case.

II. BVUA IS NOT ENGAGED IN "LOCAL CONCERNS."

As a utility services provider, BVUA could provide its services statewide, but it lacks the authority under the BVU Authority Act to do so.  The state, in its exercise of control over BVUA's operations, limited BVUA's ability to expand its services statewide and limited BVUA's ability to provide services that would otherwise be a natural outgrowth of the services it currently provides.

Despite these limitations, however, BVUA's concerns are not local concerns for the purpose of the third *Cash* factor.  BVUA was not created by and is not controlled by any localities.  If BVUA was a local concern, it would have been created by one or more localities to which it would be beholden. As an entity created by the General Assembly and authorized by statute to provide services in multiple jurisdictions in southwest Virginia and eastern Tennessee, BVUA's concerns are not "local concerns" under *Cash*.

### III. PAYMENT OF DAMAGES FROM THE STATE TREASURY IS NOT DETERMINATIVE.

Payment of damages from the state treasury is one consideration for this Court under *Cash*, but it is not determinative. As a practical matter, the Commonwealth's treasury is rarely directly liable for damages. Under Virginia law, arms of the state are eligible to participate in specialized risk management plans that are authorized by statute, approved by the Governor, and administered by the Department of Risk Management ("DRM"). Virginia Code § 2.2-1837 provides for a self-insurance program that may provide protection against liability imposed by law for damages resulting from any claim made against any department, agency, institution, board, commission, officer, agent, or employee for acts performed in the scope of their legal duties. BVUA is eligible to participate in the State's self-insurance program administered by DRM, but it currently participates in an alternative group self-insurance risk program instead.

If BVUA is found liable at trial, damages against BVUA will not be paid from the state's specialized risk management (self-insurance) program because BVUA chose to participate in a different self-insurance program.

### IV. PRECEDENCE SUPPORTS FINDING ELEVENTH AMENDMENT IMMUNITY FOR BVUA.

BVUA is similar to Virginia Polytechnic Institute and State University ("Virginia Tech") in that both entities are arms of the state, both entities are

eligible to participate in the state's specialized risk management plans, both entities have governing boards with members appointed by the General Assembly, and both entities are subject to extensive state control. Both entities, too, should be entitled to immunity from the plaintiff's FMLA self-care claims under the Eleventh Amendment.

In *Massey v. Virginia Polytechnic Institute and State University*, the plaintiff asserted a self-care claim under FMLA against Virginia Tech. Judge Dillon dismissed the FMLA self-care claim against Virginia Tech, finding that Virginia Tech was a state agency and, as such, was entitled to Eleventh Amendment immunity. 2022 U.S. Dist. LEXIS 49646 (W.D. Va. Mar. 21, 2022).

In reaching her decision, Judge Dillon relied on the United States Supreme Court case of *Coleman v. Court of Appeals of Maryland*. 566 U.S. 30, 132 S. Ct. 1327, 182 L. Ed. 2d 296 (2012). In *Coleman*, the Supreme Court held as follows:

> The question in this case is whether a state employee is allowed to recover damages from the state entity that employs him by invoking one of the provisions of a federal statute that, in express terms, seeks to abrogate the States' immunity from suits for damages. The statute in question is the [FMLA]. The provision at issue requires employers, including state employers, to grant unpaid leave for self-care for a serious medical condition, provided other statutory requisites are met, particularly requirements that the total amount of annual leave taken under all the Act's provisions does not exceed a stated maximum. [29 U.S.C.] § 2612(a)(1)(D). In agreement with every Court of Appeals to have addressed this

> question, this Court now holds that suits against States under this provision are barred by the States' immunity as sovereigns in our federal system.

*Id.* at 33. Because BVUA, like Virginia Tech, is an arm of the state, it too is entitled to Eleventh Amendment immunity under *Massey* and *Coleman* for the plaintiff's FMLA self-care claims, and such claims against BVUA should be dismissed.

## CONCLUSION

For the foregoing reasons, defendant BVU Authority, by counsel, requests that Counts 1 and 2 related to the FMLA self-care provisions be dismissed with prejudice for lack of subject matter jurisdiction and for such other and further relief that this Court deems appropriate.

Respectfully submitted,

BVU AUTHORITY (incorrectly sued herein as BRISTOL VIRGINIA UTILITY AUTHORITY)

 /s/  Jennifer D. Royer
          Of Counsel

Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant

## CERTIFICATE

I hereby certify that on the 13th day of January, 2023, I have electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thomas E. Strelka, Esq.
L. Leigh R. Strelka, Esq.
N. Winston West, Esq.
Brittany M. Haddox, Esq.
Monica L. Mroz, Esq.
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, Virginia 24018

/s/  Jennifer D. Royer
Jennifer D. Royer, Esq. (VSB # 68099)
ROYER LAW FIRM, P.C.
PO Box 4525
Roanoke, Virginia 24015
540.788.2892  Telephone
540.675.4093  Facsimile
jroyer@royerlawfirm.com
Counsel for Defendant