# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **JAMES WOOD**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22CV00018 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **BRISTOL VIRGINIA UTILITY** | ) | Judge James P. Jones |
| **AUTHORITY**,[1] | ) | |
| | ) | |
| Defendant. | ) | |

*Thomas E. Strelka,* Strelka Employment Law, Roanoke, Virginia, for Plaintiff; *Jennifer D. Royer,* Royer Law Firm, P.C., Roanoke, Virginia, for Defendant.

In this civil action, James Wood asserts federal and state law claims against BVU Authority "BVUA", including Counts I and II brought pursuant to the self-care provision of the Family Medical Leave Act (FMLA), 29 U.S.C. § 2612(a)(1)(D). The plaintiff seeks, among other things, compensation for lost wages and benefits and damages for emotional pain and suffering. Compl. 17, ECF No. 1. BVUA has moved to dismiss these counts for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), contending that it is entitled to Eleventh

---

[1] The plaintiff sues by name Bristol Virginia Utility Authority, which the defendant points out is a misnomer. Although the plaintiff has not moved to amend his Complaint nor has the defendant asked the court to act on the misnomer, I will refer to the defendant herein as it is named in the Virginia Code, BVU Authority. Va. Code Ann. § 15.2-7203.

Amendment immunity. Following discovery on this issue, the parties have provided supplemental briefing. After consideration of the pertinent law and the facts as developed by the parties, I find that BVUA does not have a sufficiently close relationship with the Commonwealth to entitle it to such immunity. I will deny the defendant's Motion to Dismiss for Lack of Jurisdiction.[2]

I.

The underlying facts, based on the discovery allowed, are generally undisputed. The motion to dismiss record shows the following facts.

BVUA's principal place of business is in Bristol, Virginia. The Virginia General Assembly created BVUA to provide various utility services to residents in three localities in Virginia and one in Tennessee. A few years after its creation and after criminal investigations involving BVUA's board members and employees, the Virginia General Assembly amended the BVUA Act to impose internal controls and replaced some of the board members. The board appoints BVUA's president, and the president oversees the day-to-day operations.

The plaintiff, who worked for BVUA as an engineering technician, files suit against BVUA, alleging it terminated his employment because he attempted to use

---

[2] The defendant has also filed a motion to dismiss all counts of the Complaint pursuant to Rule 12(b)(6) for failure to state claims upon which relief can be granted. That motion will be determined in a separate opinion.

the self-care provisions of the FMLA after he contracted COVID-19 and denied him such benefits under the FMLA.

II.

Moving to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), BVUA claims immunity from suit. A Rule 12(b)(1) motion challenges the court's authority to proceed with a case, raising a jurisdictional bar. *Cunningham v. Gen. Dynamics Info. Tech. Inc.*, 888 F.3d 640, 649 (4th Cir. 2018). The plaintiff bears the burden of establishing that subject-matter jurisdiction exists. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A party may challenge subject-matter jurisdiction as either a facial or factual attack. *Kerns v United States*, 585 F.3d 187, 192 (4th Cir. 2009). A facial attack requires the court to assume the well-pleaded allegations in a complaint are true. However, a factual attack requires the trial court to weigh the evidence to resolve the disputed jurisdictional facts. *Id*.

Here, the defendant has launched a factual attack. Dismissal under Rule 12(b)(1) is appropriate "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans*, 166 F.3d at 647.[3] To conduct the immunity analysis, courts may consider evidence outside the

---

[3] I have omitted internal quotation marks, citations, or alterations here and throughout this opinion unless otherwise noted.

pleadings. *Cunningham*, 888 F.3d at 650 ("When . . . a party challenges the veracity of the facts underpinning subject matter jurisdiction, the trial court may go beyond the complaint, conduct evidentiary proceedings, and resolve the disputed jurisdictional facts." The parties have engaged in discovery and supplemented the record.

The plaintiff's claims in Counts I and II fall under the "self-care" provision of the FMLA. That provision allows an employee to take leave for a serious health condition if the employee is unable to perform the functions of the position. 29 U.S.C. § 2612(a)(1)(D). The Supreme Court has held that self-care claims seeking damages can be barred by sovereign immunity. *Coleman v. Ct. of App. of Md.*, 566 U.S. 30 (2012). The issue is whether BVUA can be considered an arm-of-the-state, making it immune from these causes of actions under the Eleventh Amendment. That immunity extends from states to their political subdivisions or to entities so entwined with the states that they are essentially considered arms-of-the state, subject to the states' control. *Lake Country. Ests., Inc. v. Tahoe Reg'l Plan. Agency*, 440 U.S. 391, 401–02 (1979). Unless the state waives sovereign immunity or the Constitution grants Congress the power to abrogate that immunity, the immunity remains intact. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675–78 (1999). The Eleventh Amendment addresses two primary

concerns: (1) protecting the state coffers from the federal government to avoid financial ruin; and (2) respecting the integrity of each state in the federal system. *Id.*

The most important factor is whether a judgment against the entity would be paid from the state's treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 51 (1994). If a state would cover a substantial portion of the judgment against an entity, then the governmental entity is entitled to Eleventh Amendment immunity. *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d, 219, 223 (4th Cir. 2001); *Bockes v. Fields*, 999 F.2d 788, 790–91 (4th Cir. 1993). BVUA has elected to participate in a self-insurance program that is not administered by the state. It does not receive a line-item appropriation from the state legislature. BVUA charges rates and fees for its services to fund its operating expenses. The parties agree, and I so find, that BVUA, not the Commonwealth's treasury, would pay a judgment against BVUA. Although this factor is accorded significant weight, the inquiry does not end here.

If an entity is so closely related to a state that a suit against it would offend the state's dignity as a sovereign, then allowing the suit to proceed would run afoul of the Eleventh Amendment. *Cash*, 242 F.3d at 223. To determine the relationship between the entity and the state, the Fourth Circuit has considered three factors: (1) the degree of the control the state exercises over the entity; (2) whether the entity's scope of interest is statewide or local; and (3) how the state law treats the entity. *Id.*

A court must determine the amount of autonomy the state allows the entity. In *Ram Ditta ex. rel. Ram Ditta v. Maryland National Capital Park & Planning Commission*, 822 F.2d 456, 458–59 (4th Cir. 1987), the Fourth Circuit held the Maryland National Capital Park and Planning Commission was not entitled to Eleventh Amendment immunity because it was not controlled by the state. The court considered that the Commission existed as a body corporate — like counties and municipalities — that could "sue and be sued in its corporate capacity." *Id*. The state attorney general did not represent the Commission in legal matters. The Commission could enter many types of contracts, including employment contracts, leases, and permits. And the Commission could purchase, sell, or exchange property. *Id*.

As in *Ram* Ditta, BVUA is largely autonomous from the Commonwealth. Its Board appoints its president, the president makes all personnel decisions, and establishes personnel rules. Va. Code Ann. §§ 15.2-7206, -7207. BVUA can sue and be sued in its own capacity. Va. Code Ann. § 15.2-7207. It is not represented by the Attorney General of Virginia in litigation matters and has authority to transfer assets, to contract and to create its own operating and capital budgets. *Id*. While the Commonwealth exercises control by dictating who sits on its Board and limits certain of the Board's powers, these restrictions on its autonomy are minor in

comparison to BVUA's abilities to govern itself, set its own budget, and litigate separately from state control.

The parties agree that BVUA's scope of interest is not statewide. While theoretically BVUA could have a statewide interest, the legislature has limited its scope to a region that includes certain counties in Virginia and one county in Tennessee. In *Ram Ditta,* the Commission oversaw a system of parks in two counties. 822 F.2d at 459. The Fourth Circuit held that the Commission was primarily involved with local concerns because its jurisdiction was limited to two counties and the benefit of its operations inured to the residents of those counties. *Id*. In *Cash*, the Fourth Circuit held that a county school board's scope included only local concerns even though its interest in education might be considered statewide. 242 F.3d at 226. As in *Cash* and *Ram Ditta*, BVUA is involved primarily with local and out-of-state concerns because its jurisdiction is limited to certain localities in and out of the Commonwealth and the benefit of its operation inures to the residents of those areas.

The last factor to consider is how state law describes the entity's relationship with the state. *Harter v. Vernon*, 101 F.3d 334, 342 (4th Cir. 1996). Whether an entity shares in the sovereign immunity of the state is a federal question. *Id*. While federal courts give deference to state court decisions regarding an entity's status, their treatment is not determinative. *Id*. The Supreme Court of Virginia has not

addressed whether BVUA's relationship with the Commonwealth is close enough to entitle it to receive Eleventh Amendment immunity. The Virginia Code proclaims, "No provisions of this chapter nor act of an authority, including the procurement of insurance or self-insurance, shall be deemed a waiver of any sovereign immunity to which the Authority or its directors, officers, employees, or agents are otherwise entitled." Va. Code. Ann. § 15.2-7221. But that proclamation alone does not create an entitlement to immunity. As previously discussed, the Virginia Code reflects that the Commonwealth exercises limited control over BVUA. The General Assembly reaffirmed its intent to not limit or restrict "any powers that the Authority might otherwise have under any laws of the Commonwealth." Va. Code. Ann. § 15.2-7226.

### III.

For these reasons, I find the Eleventh Amendment does not prohibit this court from exercising jurisdiction over BVUA in this case. It is **ORDERED** that defendant's Motion to Dismiss for Lack of Jurisdiction, ECF No. 5, is DENIED.

ENTER: February 10, 2023

/s/  JAMES P. JONES
Senior United States District Judge