## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ABINGDON  DIVISION

| | | |
|---|---|---|
| **JAMES WOOD**, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:22CV00018 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **BRISTOL VIRGINIA UTILITY** | ) | JUDGE JAMES P. JONES |
| **AUTHORITY**,[1] | ) | |
| | ) | |
| Defendant. | ) | |

*Thomas E. Strelka, L. Leigh R. Strelka, N. Winston West, IV, Brittany M. Haddox, and Monica L. Mroz, STRELKA EMPLOYMENT LAW, Roanoke, Virginia, for Plaintiff; Jennifer D. Royer, ROYER LAW FIRM, P.C., Roanoke, Virginia, for Defendant.*

In this employment case, the plaintiff James Wood asserts claims against his former employer for violations of the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and state-law whistleblower statutes. The defendant has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, I will deny the motion in part and grant it in part, with leave to amend.

---

[1] Wood has sued Bristol Virginia Utility Authority, which the defendant points out is a misnomer. Although Wood has not moved to amend his Complaint nor has the defendant asked the court to act on the misnomer, I will refer to the defendant herein as it is named in the Virginia Code, BVU Authority. Va. Code Ann. § 15.2-7203.

I.

The Complaint alleges the following facts, which I must accept as true for purposes of deciding the Motion to Dismiss.

Wood worked for the defendant, BVU Authority (BVUA), as a Geographic Information Systems and Engineering Technician from June 2016 until May 28, 2021. Wood provided engineering support to BVUA's Electrical and Water Department and Wastewater Department and maintained the Geographic Information Systems (GIS). Wood avers that he exhibited exceptional work performance and could fulfill the essential functions of his job.

During the onset of the COVID-19 (COVID) pandemic, the Virginia Department of Labor and Industry promulgated regulations to protect employees from infection. Wood alleges that BVUA discouraged employees from complying with the regulations, encouraging them to report to work even if they or close family members tested positive for COVID. In March 2021, one of Wood's coworkers came to work for a week even though he had tested positive for COVID. On March 30, 2021, Wood tested positive for COVID. He reported his positive test and on or about that date informed BVUA's Safety Manager, Brad Griswold, that the coworker had been reporting to work after testing positive for COVID.

The Sullivan County Health Department gave Wood an isolation letter on April 3, 2021. That letter directed him to quarantine in accordance with state

-2-

regulations and guidance from the Centers for Disease Control and Prevention (CDC).  The following week, Wood spent four days in the hospital with respiratory failure and sepsis.   The infection left him with lifelong disabilities, including irrevocably damaged lungs.  Wood now suffers from a medical condition known as Long COVID.

After his release from the hospital, Wood required oxygen because he had been experiencing shortness of breath, fatigue, and substantially limited respiratory function.  After requesting leave under the FMLA, he remained out of work until April 26, 2021.  Wood's doctor released him to return to work on a reduced schedule of twenty hours per week, advising that the schedule was medically necessary until May 10, 2021.

When Wood returned to work, Donna Biggs, the BVUA Human Resources Manager, asked Wood to share the FMLA paperwork with BVUA CEO Don Bowman and Phillip King, Wood's immediate supervisor.  Bowman and King instructed Wood to tell his doctor to change the medical release and FMLA documents so that the diagnosis reflected Long COVID.  They wanted the doctor to specify the number of hours Wood could work each day and the total number of hours he could work for the week and to state that he must have one complete day off during the week to rest.  Bowman and King asked that the doctor report that Wood would need oxygen while at work and state the job functions Wood was not

able to perform based on his job description.  They insisted the doctor provide the amended release documents within the time BVUA allotted, or BVUA would terminate Wood.  Two days later, on April 28, 2021, a member of the BVUA Human Resources Department informed Wood that management believed his work productivity was poor.  He received a negative performance evaluation.  On April 30, 2021, Bowman decided that Wood would have to exhaust his sick leave before qualifying to use FMLA leave.

Wood learned on May 9, 2021, that he had COVID again.  The Sullivan County Health Department instructed Wood to quarantine for ten days.  Again, Wood requested FMLA leave.  Claiming the medical diagnosis was too vague, BVUA rejected his request.  Wood complained to the Human Resources Department that BVUA created and maintained a hostile work environment for employees with disabilities.  Subsequently, BVUA rejected his request for medical leave under the FMLA.

Wood's physician faxed a medical note to BVUA on May 20, 2021, requesting that BVUA excuse Wood from work through May 28, 2021.  The doctor explained that Wood had COVID twice and was having cognition and endurance issues.  The doctor's note mentioned a referral to a pulmonologist for Wood's lung damage and that it would be medically necessary for Wood to work on a reduced schedule of thirty-two hours per week upon his return to work on May 28, 2021.

Specifically, Wood would need the modified schedule until June 14, 2021.  Further, the doctor explained the medical necessity for Wood to intermittently work.  Wood could "experience 'episodes of incapacity' lasting between two and eight hours." Compl. ¶ 49, ECF No. 1.  The doctor estimated such episodes would occur three to four times per week for six months.  However, the doctor concluded Wood would be "able to perform all job functions but may require more time to complete tasks and work shorter days or weeks." *Id*.

The day before returning to work, May 27, 2021, Wood contacted Biggs and requested permission to use supplemental oxygen at work.  Wood filed a complaint with OSHA on May 28, 2021.  He reported that BVUA retaliated against him and harassed him for reporting that a coworker came to work after testing positive for COVID, and that he, too, had contracted COVID and experienced severe symptoms.  That same day, CEO Bowman terminated Wood by email.

Based on these facts, Wood asserts six claims.  Counts I and II allege retaliation and interference with his rights in violation of the FMLA.  Counts III and IV allege discrimination, retaliation, and failure to accommodate in violation of the ADA.  Counts V and VI allege retaliation in violation of the state's whistleblower laws, including the state Fraud and Abuse Whistle Blower Protection Act (FAWBPA).

BVUA has moved to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6).  BVUA contends that as to Count I, Wood fails to allege facts establishing a causal connection between his taking FMLA leave and his termination.  As to Count II, it asserts that the Complaint fails to state sufficient facts demonstrating that BVUA interfered with Wood's FMLA rights. As to Counts III and IV, BVUA argues that those claims must be remanded to the Equal Employment Opportunity Commission (EEOC) for further investigation.  It further contends that Wood has not shown as to Count IV that he could perform the essential elements of his job with reasonable accommodation or that BUVA denied any request for such accommodation.

As to Count V, BVUA argues that Wood has failed to show that his fellow employee's COVID diagnosis while at work was a violation of law or regulation or that Wood's negative performance evaluation constituted an adverse employment action.  Finally, as to Count VI, BVUA asserts that Wood's report to OSHA did not fall under the required elements of FAWBPA protection, nor could it have a causal relation to his termination by BVUA, since there is no allegation that BVUA knew of it before Wood was terminated.

The motion has been briefed and orally argued and is ripe for decision.

II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A complaint need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Ray v. Roane*, 948 F.3d 222, 226 (2020).[2] To survive a motion to dismiss, the complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Resolution of a motion to dismiss "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray*, 948 F.3d at 226. When evaluating a pleading, the court accepts as true all well-pleaded facts and construes those facts in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A complaint does not need detailed factual allegations, but it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

A. *Counts I and II: Family Medical Leave Act.*

Wood asserts two claims under the FMLA.  In Count I, he alleges retaliation, and in Count II, he claims interference with his FMLA rights.  BVUA moves to dismiss both counts for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6).  I will deny the Motion to Dismiss as to Counts I and II.

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" for an employee's serious health condition that makes the employee unable to perform the functions of their job.  29 U.S.C. § 2612(a)(1).  An illness involving inpatient care in a hospital or continuing treatment by a health care provider qualifies as a "serious health condition."  29 U.S.C. § 2611(11).

The FMLA allows for intermittent leave when medically necessary.  29 U.S.C. § 2612(b)(1).  When the need for leave is not foreseeable, as in the case of an emergency, the employee must notify the employer of the need for leave "as soon as practicable."  29 C.F.R. § 825.302(a).  "[T]he determination of when an employee could practicably provide notice must take into account the individual facts and circumstances."  29 C.F.R. § 825.302(b).

---

[2]  I have omitted internal quotation marks, citations, and alterations here and throughout this opinion unless otherwise noted.

An employer may require that the leave request "be supported by a certification issued by the health care provider" and upon such a request, "[t]he employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a). The statute sets forth the information that the certification should contain. 29 U.S.C. § 2613(b).

The FMLA makes it unlawful for any employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]." 29 U.S.C. § 2615(a)(2). The Fourth Circuit treats FMLA discrimination and retaliation claims like discrimination and retaliation claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2. *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013). Thus, a court will evaluate a plaintiff's FMLA retaliation claim using Title VII standards.

A plaintiff must allege facts that permit a court to plausibly infer that his employer discharged or discriminated against him because he exercised his FMLA rights. *Iqbal*, 556 U.S. at 679. A close temporal relationship between these two events can be sufficient to establish causality. *Laing*, 703 F.3d at 720.

The FMLA also makes it unlawful for any employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1). To state a claim for FMLA interference, the plaintiff must show that (1) he was an eligible employee, (2) the defendant was an

FMLA-defined employer, (3) he was entitled to leave under the statute, (4) he gave notice to the employer that he would take FMLA leave, and (5) the defendant denied his FMLA rights. *Corbett v. Richmond Metro. Transp. Auth.*, 203 F. Supp. 3d 699, 709 (E.D. Va. 2016). Interference includes refusing to authorize FMLA leave. *Rodriguez v. Reston Hosp. Ctr., LLC*, No. 1:16-cv-623 (JCC/JFA), 2017 WL 772348, at *4 (E.D. Va. Feb. 28, 2017).

BVUA argues that the retaliation claim fails to assert any facts establishing a causal connection between Wood's use of FMLA leave and his termination. Regarding alleged interference with FMLA rights, BVUA asserts that the claim lacks sufficient facts to demonstrate BVU interfered with Wood's FMLA rights. Even after *Twombly* and *Iqbal*, the Rule 8 pleading requirements are not onerous. A plaintiff need not allege every fact essential to his claim. *Twombly*, 550 U.S. at 555. In the employment discrimination context, he need not even allege a prima facie case. *Id*. He is merely required to state enough facts to allow the court to infer that he has a plausible claim. I find that Wood has alleged sufficient facts to elevate both of his FMLA claims above the speculative level.

After testing positive for COVID and spending four days in the hospital with a serious medical condition — respiratory failure and sepsis — that led to irrevocable lung damage and required oxygen, he requested FMLA leave. Twelve days later, his doctor approved Wood's return to work on a reduced work schedule. Two days

after he received approval to return to work, BVUA gave Wood a negative performance evaluation. Subsequently, Wood contracted COVID again. Sullivan County Health Department directed Wood to quarantine for ten days, so he applied for FMLA leave again. BVUA's CEO rejected his request, claiming the diagnosis was too vague. On May 20, 2021, Wood's doctor faxed a request asking BVUA to excuse Wood from work through May 28, 2021. The next day, May 21, 2021, Wood submitted a FMLA form. On that form, his doctor described the medical complications Wood was experiencing after having COVID twice. The doctor explained Wood would require care from a pulmonologist, would need a reduced work schedule and intermittent leave, and would require more time to complete tasks. The day before his scheduled return to work, May 27, 2021, Wood asked BVUA for permission to use supplemental oxygen at work. BVUA terminated him by email the next day. This temporal proximity, coupled with the doctor's note, gives rise at this pleading stage to a plausible inference of retaliatory intent and interference. Viewing the allegations in the light most favorable to Wood, I conclude that the allegations are sufficient to state claims of retaliation and interference under the FMLA.

B. *Counts III and IV: Americans with Disabilities Act.*

1.

Wood contends that his termination was in violation of the ADA, and he raises two claims under that statute. Count III alleges discrimination and retaliation, and Count IV alleges failure to accommodate. BVUA argues these counts must be dismissed and remanded to the Equal Employment Opportunity Commission ("EEOC") for failure to exhaust administrative remedies. BVUA claims the EEOC did not complete its investigation and relies on the fact that the EEOC issued a right-to-sue letter less than 180 days from the date Wood filed his charge with the EEOC. Because Wood did not respond to this argument in response to the Motion to Dismiss, BVUA asserts Wood has conceded the exhaustion issue. Additionally, BVUA moves to dismiss Count IV for failure to state a claim.

"Many district courts in this circuit and others, including on motions to dismiss, have recognized the general principle that a party who fails to address an issue has conceded the issue." *Caner v. Autry*, 16 F. Supp. 3d 689, 704 (W.D. Va. 2014). In the interest of judicial economy, however, I will exercise my discretion and address the exhaustion issue. In Section 12117, the ADA adopted the powers, remedies, and procedures found in Title VII. 42 U.S.C. § 12117. Before a plaintiff can bring a suit under this statute, he is required to file a charge of unlawful employment practices with the EEOC. *Sydnor v. Fairfax Cnty.*, 681 F.3d 591, 593

-12-

(4th Cir. 2012) (recognizing that the ADA requires that a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC before pursuing a suit in federal court). The administrative regimen under the statute requires the EEOC to notify an employer about an allegation and to investigate. 42 U.S.C. § 2000e–5(b). The statute gives the EEOC 180 days to either dismiss the charge, file a civil action, or secure a conciliation agreement. If none of those events occur, then it must notify the employee of his right to sue. 42 U.S.C. § 2000e–5(f)(1). The exhaustion requirement is an integral part of the enforcement scheme for the federal discrimination statutes. *Sydnor,* 681 F.3d. at 593. Requiring a party to first file a charge with the EEOC ensures that the employer is given notice of the alleged claims and has an opportunity to remedy the discrimination, and it may allow the parties to avoid litigation. *Id*.

As I observed in *West v. Merillat Industries*, *Inc*., the EEOC's 1977 regulation permitting the issuance of early right-to-sue notices has caused considerable litigation. 92 F. Supp. 2d 558, 560 (W.D. Va. 2000). If an EEOC District Director determines that it is probable the EEOC will not complete its administrative processing within 180 days, then the agency may issue a notice of right to sue. 29

-13-

C.F.R. § 1601.28(a)(2).  Employers have argued that the regulation and practice are contrary to statute because it allows for a premature notice.[3]

The Fourth Circuit has not ruled on the question.  Four other circuit courts have addressed the issue, resulting in a circuit split.  Three of the four circuits have upheld the regulation.  *Sims v. Trus Joist MacMillan*, 22 F.3d 1059, 1063 (11th Cir. 1994) (upholding the EEOC's regulation); *Brown v. Puget Sound Elec. Apprenticeship & Training Tr.*, 732 F.2d 726, 729 (9th Cir. 1984) (same); *Walker v. United Parcel Serv.*, *Inc.*, 240 F.3d 1268, 1275 (10th Cir. 2001) (same).  *Contra Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1347 (D.C. Cir. 1999) (invalidating the EEOC's regulation).

BVUA has brought to my attention two decisions from other judges of this court remanding cases to the EEOC for exhaustion of the 180-day period after applying the two-step test from *Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc*., 467 U.S. 837, 842–43 (1984):  *Hardy v. Lewis Gale Med. Ctr.*, 377 F. Supp. 3d 596 (W.D. Va. 2019) (Dillon, J.), and *Taylor v. Cardiology Clinic, Inc*., 414-cv-00046, 2015 WL 770439, at *3 (W.D. Va. Feb. 24, 2015) (Kiser, J.).  The *Chevron* test first examines whether the meaning of the statute is ambiguous.  467 U.S. at 842–43.  If the intent of Congress is clear, then the analysis ends, and the agency and the court

---

[3] Early termination of the EEOC's investigation does not deprive a federal court of jurisdiction over the claim.  *Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir. 2019).

"must give effect" to the unambiguous congressional intention. *Id*. If the intent is uncertain, then the next step requires deference to the agency's interpretation if that interpretation is "based on a permissible construction of the statute." *Id*. at 843.

I am still persuaded that the EEOC's regulation is not contrary to law and that neither dismissal nor remand is required. *West*, 92 F. Supp. 2d at 561. The statute requires the EEOC to investigate, but it does not by its terms prohibit the EEOC from issuing a right-to-sue notice before the 180-day period has expired. *Id*. The plain language of the statute, specifically § 2000e–5(f) of Title VII, does not require the EEOC to withhold notification of the right to sue until the 180-day period has expired, even if the EEOC has failed to investigate. "While the legislative history is uncertain, there is support for the proposition that 180 days was meant solely to be an outside time limit, to prevent bureaucratic delay from stifling claims of discrimination." *Id*. The practical effect of remand for the purpose of allowing the time to elapse is unnecessary delay.

The Fourth Circuit has stressed that "the exhaustion requirement should not become a tripwire for hapless plaintiffs." *Sydnor*. 681 F.3d at 594. Therefore, if "'a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation,' she may 'advance such claims in her subsequent civil suit.'" *Id*. (quoting *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000)). I find

that Wood's claim would reasonably relate to his EEOC charge and could be expected to follow from a reasonable investigation.  Thus, I will deny the Motion to Dismiss as to Counts III and IV, insofar as it is based on a failure to exhaust.

2.

BVUA also moves to dismiss Count IV, failure to accommodate under the ADA, for failure to state a claim, arguing that the facts alleged in the Complaint fail to show he could perform the job with reasonable accommodations and that BVUA denied any request he made for an accommodation.  I will grant the Motion to Dismiss this claim but will grant Wood leave to amend.

The ADA requires an employer to "make reasonable accommodations for an applicant or an employee's disability."  *EEOC v. Fed. Express Corp.*, 513 F.3d 360, 371 (4th Cir. 2008).  To determine the appropriate accommodation, the employer may need to engage in an interactive process to identify the employee's limitations and potential reasonable accommodations "that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3).  A claim for failure to accommodate requires a plaintiff to plausibly allege "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position; and (4) that the employer refused to make such accommodations."  *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013).

-16-

BVUA concedes, only for the purposes of its motion, that Wood has alleged sufficient facts to establish the first two elements of the failure to accommodate claim. It challenges whether Wood's pleading satisfies the third and fourth elements. Specifically, BVUA contends that he has not met the third prong because he has not shown he could perform the essential functions of the job with a reasonable accommodation.

To survive a motion to dismiss, Wood's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely conceivable. *Twombly*, 550 U.S. at 555, 570. Accepting the allegations in the light most favorable to Wood, he avers that his job included providing engineering support and maintaining the GIS. He represents that he provided exceptional work and could perform the essential functions of his job as a GIS and Engineering Technician with or without an accommodation. He does not provide supporting facts, such as a description of prior evaluations or commendations. To support his conclusory claim that he was performing his work adequately, Wood argues that (1) he had "only" experienced negative feedback from his employer after he had requested FMLA leave and complained about the workplace, and (2) that his doctor reported that he was "able to perform all job functions." Pl.'s Br. Opp'n 14, ECF No. 12. However, the Complaint never states that Wood "only" received negative feedback before requesting medical leave. *S.*

-17-

*Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy.").  In addition, the doctor is simply addressing Wood's medical condition, not whether he performed the job properly.

Wood's failure-to-accommodate claim must be dismissed because he has not alleged facts showing that he could perform the essential functions of his job with reasonable accommodations.  While he references a need for a reduced work schedule, more time to complete tasks, the use of supplemental oxygen, and intermittent absences from work because he could experience episodes of incapacity between two and eight hours about three to four times per week for six months, he does not describe the essential functions of his job.  He does not state how his disabilities impacted him in the workplace, and how these accommodations would help him perform the essential functions of his job.  *Wilson*, 717 F.3d at 345 (explaining that reasonableness of the request is only one part of the inquiry, and the plaintiff "must also show that with this accommodation he was a qualified individual — that is, he could have performed the essential functions of his position").

Because I find the allegations in the Complaint are insufficient to show Wood could accomplish the essential functions of his position with a reasonable

accommodation, I will not address the fourth prong.  I will grant the Motion to Dismiss as to Count IV with leave to amend.

### C. *Count V: Virginia Whistleblower Statute.*

Wood submits that he is entitled to damages because BVUA retaliated against him for reporting a violation of law, as proscribed by Section 40.1-27.3 of the Virginia Code.  BVUA moves to dismiss, arguing that the claim fails to allege sufficient facts.  For the following reasons, I will deny the motion to dismiss Count V.

The relevant statute prohibits employers from retaliating against employees who participate in certain protected conduct. Va. Code Ann. § 40.1-27.3.  This provision prohibits employers from retaliating against an "employee [who] in good faith reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official."  Va. Code Ann. § 40.1-27.3(A)(1).  Wood avers he engaged in protected activity when he reported to a BVUA safety manager and to OSHA that a coworker reported to work while infected with COVID in violation of state regulation 16 VAC 25-220-40.  Further, he asserts BVUA retaliated by giving him a negative performance review first, rejecting his request for FMLA leave next, and then finally, terminating him.  BVUA argues that the claim fails because Wood did not allege that he acted in good faith, that BVUA violated any provision under the COVID regulations, and that he reported the alleged

violation to a supervisor or appropriate law enforcement official.  Moreover, BUVA

asserts that a negative performance evaluation or request for clarification regarding

a leave request does not constitute an adverse employment action.

In response to the COVID pandemic, the Virginia Safety and Health Codes

Board adopted regulation 16 VAC 25-220-40 to prevent the spread of disease to and

among employees and employers.  *Va. Mfrs. Ass'n v. Northam*, 866 S.E.2d 27, 29–

30 (Va. Ct. App. 2021).  That regulation in effect in this case forbid employers from

allowing employees "known or suspected to be infected with SARS-CoV-2 virus to

report to or remain at the work site . . . until cleared for return to work."  16 VAC

25-220-40(B)(5).  "Symptomatic employees known or suspected to be infected with

the SARS-CoV-2 virus are excluded from returning to work" until all three of the

conditions listed in paragraph (C)(1) have been met."  16 VAC 25-220-40(C)(1).

Wood has sufficiently alleged a plausible claim of retaliation for reporting a

violation of COVID regulations.  A plaintiff "need only . . . prove that he opposed

an unlawful employment practice which he reasonably believed had occurred or was

occurring."  *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003).  A plaintiff is not

required to show that the underlying report of unlawfulness was in fact meritorious

to prevail. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 355 n.1 (4th Cir. 1985),

*overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

If Wood subjectively and reasonably believed that his employer was engaged in

unlawful practices by encouraging employees infected with COVID to report to work and to remain at the worksite when he reported the matter to the safety manager and to OSHA, then he establishes a plausible case at this juncture and survives the motion to dismiss. *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1312 (11th Cir. 2002); *Peters*, 327 F.3d at 321 (this is "a standard which we will refer to as one of 'reasonable belief'"). Accordingly, I will deny the motion to dismiss Count V.

### D. Count VI: Virginia's Fraud and Abuse Whistle Blower Protection Act.

In Count VI, Wood alleges that BVUA retaliated against him for reporting to human resources, management, and OSHA instances of wrongdoing in violation of FAWBPA, Va. Code Ann. §§ 2.2-3009–3012. BVUA moves to dismiss Count VI, contending that (1) FAWBPA applies only to people compensated by state agencies and that (2) Wood was not a whistleblower, as defined by FAWBPA, reporting in good faith misconduct or instances of wrongdoing to his supervisor or an appropriate authority leading to his termination.

According to BVUA, FAWBPA does not apply to Wood because he was not a person compensated by a state agency, citing *Richardson v. Prince William Cnty.*, No. 1:17-cv-00761, 2018 WL 548666, at *3 (E.D. Va. Jan. 24, 2018). FAWBPA provides that it is the "policy of the Commonwealth that citizens of the Commonwealth and employees of governmental agencies be freely able to report instances of wrongdoing or abuse committed by governmental agencies or

independent contractors of governmental agencies."  Va. Code Ann. § 2.2-3009.

Specifically, "[n]o employer may discharge, threaten, or otherwise discriminate or

retaliate against a whistle blower whether acting on his own or through a person

acting on his behalf or under his direction."  *Id*. at § 2.2-3011(A).

BVUA meets the definition of a government agency under FAWBPA.  A

government agency means any county, city, town or local or regional governmental

authority.  Va. Code § 2.2-3010.  BVUA is a political subdivision.  Va. Code § 15.2-

7201.  The Virginia Code equates political subdivisions in the Commonwealth to

counties, cities, towns, boroughs, and any other division vested with the authority to

enact rules and regulations "having the force or effect of law."  Va. Code § 8.01-

385(3).  The General Assembly gave the BVUA the power to adopt rules and

regulations and to enforce those rules and regulations with civil penalties.  Va. Code

Ann. § 15.2-7207.  Wood is a citizen of the Commonwealth, was an employee of

BVUA, and BVUA meets the definition of a government agency as defined by

FAWBPA.

BVUA challenges whether Wood qualifies as a whistleblower.  To meet the

definition, an employee must make a "good faith report" of "wrongdoing or abuse"

to "one of the employee's superiors, an agent of the employer, or an appropriate

authority."  Va. Code Ann. § 2.2-3010.  FAWBPA defines a good faith report as one

"made without malice" and about conduct that the employee "has reasonable cause

to believe is true." *Id*. at § 2.2-3010.  As evidence that Wood did not act in good faith, BVUA points to a delay of sixty-two days between knowing that his coworker had come to work after testing positive for COVID and reporting the same to OSHA. Further, BVUA argues that the Complaint makes no allegation that Wood made the report to OSHA before receiving the termination email, but the Complaint does allege that Wood had made a report to BVUA's safety manager about his coworker sixty days prior to his termination.  However, under all of the circumstances, I find that it is plausible that Wood made a good faith report.

Wrongdoing is defined as a violation, "which is not of a merely technical or minimal nature, of a federal or state law or regulation, local ordinance, or a formally adopted code of conduct or ethics of a professional organization designed to protect the interests of the public or employee." *Id*.  Wood pleaded that BVUA violated a state regulation by encouraging employees to return to work while sick with COVID, even if they were exhibiting symptoms.  He learned his coworker tested positive for the disease and then reported to work in March of 2021.  After Wood contracted COVID that same month, he reported his coworker to a BVUA safety manager.

Wood reported to an appropriate authority. Under FAWBPA, the definition of an appropriate authority includes "a member, officer, agent, representative, or supervisory employee of the agency or organization."  Va. Code Ann. § 2.2-3010. Notwithstanding BVUA's argument that OSHA, a federal agency, does not qualify

as an appropriate authority to receive a report about the violation of a state regulation, Wood's pleading alleges he reported perceived violations of COVID regulations to the company's human resources and management personnel before any adverse employment action occurred. Wood reported to a safety manager that his coworker reported to work after testing positive for COVID. Wood averred that BVUA encouraged employees sick with COVID to report to and remain at work in violation of a state regulation designed to safeguard employees and the public. Reporting a purported violation to human resources or to a safety manager qualifies as an appropriate authority.

A more complicated issue is whether Wood has sufficiently pleaded the causation element. BVUA argues that even if Wood is a whistleblower and the report constitutes protected activity under FAWBPA, there is no causal connection between his report and his termination. Wood contends that temporal proximity between the protected activity of reporting BVUA's wrongdoing[4] and the adverse action of termination alone satisfies the causal connection. Pl.'s Br. Opp'n 18, ECF No. 12. A plaintiff can show causation in two ways: "by showing that the adverse

---

[4] According to the Complaint, the wrongdoing refers to Wood's coworker reporting to work while infected with COVID against state regulations. Compl. 16, ECF No. 1. Wood reported that conduct to Griswold, BVUA's Safety Manager, on March 30, 2021, and to OSHA on May 28, 2021. Wood does not allege in the Complaint that he reported the coworker's actions to human resources for purposes of establishing Count VI. He only mentions human resources in relation to Count VI in his brief in opposition.

act bears sufficient temporal proximity to the protected activity, or by showing the existence of facts that suggest that the adverse action occurred because of the protected activity, or a combination of the two." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 218–19 (4th Cir. 2022).

To adequately allege causation, a plaintiff must assert facts that allow the court to reasonably infer that the employer was aware of the protected activity. *Mohammed v. Cent. Driving Mini Storage, Inc*., 128 F. Supp. 3d 932, 945 (E.D. Va. 2015). Indeed, the employer knowing about the protected activity is "essential to a retaliation claim." *Jones v. HCA (Hosp. Corp. Am.)*, 16 F. Supp. 3d 622, 635 (E.D. Va. 2014) (citing *Franciso v. Verizon S., Inc*., 756 F. Supp. 2d 705, 725–26 (E.D. Va. 2010)). In addition, "[w]hen pleading a sufficient case, either the retaliation must closely follow the protected activity *or* the plaintiff must put forth a sufficient explanation for the time elapsed between the protected activity and the alleged retaliation." *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 837–38 (E.D. Va. 2016) (citing *Perry v. Kappos*, 489 F. App'x 637, 643 (4th Cir. 2012) (unpublished)). For purposes of this element, it is important to discuss separately Wood's two distinct reports — the one to OSHA and the one to BVUA.

Turning first to the OSHA report, and assuming for purposes of this opinion that a report to a federal agency like OSHA falls under the Virginia statute, BVUA

notes that Wood did not allege that he made the complaint to OSHA before BVUA

terminated him or allege that BVUA was even aware Wood made a report to OSHA.

> Regarding the threshold knowledge requirement, Wood alleges only that:

> On May 28, 2021, Mr. Wood filed an OSHA whistleblower complaint setting forth that he was harassed and retaliated against for reporting [his coworker] coming to work while infected, his own positive COVID tests, and the severe illness that followed.

> That same day, on May 28, 2021, when Mr. Wood was to return to work on a modified work schedule, still while protected by intermittent FMLA leave, Mr. Bowman terminated Mr. Wood's employment by email.

Compl. ¶¶ 51–52.  Wood fails to plead that BVUA knew about the report to OSHA

and that if BVUA knew about the report that it would have known it was Wood who

was the complainant.  Thus, the OSHA report cannot support a retaliation claim.

With regard to the report to his safety manager, Wood must plead one of the

two options.  *Hinton*, 185 F.3d at 837–38.  Courts "uniformly hold that the temporal

proximity must be 'very close.'"  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268,

273 (2001).  Although there is no bright line rule for temporal proximity, the Fourth

Circuit has suggested that the sixty-two days here between the protected activity and

the adverse employment action of termination is too long to establish causation by

temporal proximity alone.  *Laurent-Workman*, 54 F.4th at 219 (affirming district

court's dismissal of retaliation claim because a "two-month temporal gap between

notice of the complaint and the adverse employment action," without alleging more

facts, undercut inference of causation); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (reasoning that two months and two weeks was "sufficiently long so as to weaken significantly the inference of causation between the two events"); *Horne v. Reznick, Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (unpublished) (holding that district court did not err in granting summary judgment in defendant's favor on retaliation claim, as plaintiff's only evidence of causation was that she was fired two months after discrimination complaint).

Although Wood informed the safety manager and BVUA's human resource department about his belief that BVUA had violated regulations, approximately sixty days elapsed before he was terminated, undercutting the causation inference.[5]

---

[5] In his briefing, Wood cites four Fourth Circuit cases that he represents hold that a period of more than sixty days can be sufficient to show a temporal connection. That representation is accurate in two of the cases, but all of the cases are distinguishable from Wood. In *King v. Rumsfeld*, 328 F.3d at 151 n.5, the court found two months was sufficiently long to weaken the inference of causation, but did not completely undermine the inference, where a teacher was terminated at the end of the academic school year, just over two months after his supervisor learned the teacher filed a complaint. In *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004), the court decided a period of nine to ten months in a failure-to-hire case was sufficient to establish causation where an applicant applied for a position with the same employer twice and the employer did not hire him the second time after learning the applicant had filed a complaint after the first rejection. The court found it plausible the employer engaged in an adverse action at the first available opportunity after learning of the protected activity nine to ten months later.

Wood is mistaken about the amount of time that elapsed between the protected activity and the adverse employment action in *Williams v. Cerberonics, Inc.*, 871 F.2d 452 (4th Cir. 1989). Wood represents that three months was held sufficient, but the employer fired the employee four days after learning the employee spoke with an attorney. *Id.* at

To support the factual crux of this claim, Wood primarily relies on the date of his report to OSHA occurring on the same day as his termination.  But, as noted, the OSHA report cannot form the basis of his retaliation claim because Wood has failed to allege that BVUA learned of that report before his termination.

As for the second *Hinton* option, Wood likewise has failed to allege any facts to explain the delay between his report and his termination.  Thus, he has failed to plead facts sufficient to allege causation.  I will grant the motion to dismiss Count VI with leave to amend.

III.

For the reasons stated, the Motion to Dismiss, ECF No. 7, is GRANTED IN PART and DENIED IN PART.

The Motion to Dismiss is DENIED as to Counts I, II, III and V.  It is GRANTED as to Counts IV and VI, but plaintiff is given leave to amend the Complaint as to those Counts, provided the Amended Complaint is filed no later than 21 days from this date.

---

454. After the termination, the employee filed an EEOC complaint. *Id*. at 455.  Wood represents that in *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017), the Fourth Circuit found that three months satisfied a temporal connection, but in that case, the employer learned of the protected activity eight to nine months prior to initiating an investigation of the employee and the court held that that length of time was too long to establish a causal connection. *Id*.

It is so **ORDERED**.

ENTER:   March 13, 2023

/s/  JAMES P. JONES
Senior United States District Judge